BELLE IDA, The, (PATTERSON v.) See Case No. 10,824.

BELLE LEE, The, (JANNEY v.) See Case No. 7,211.

BELLE OF THE SEA, The, (HIGGINS v.) See Case No. 7,372.

BELLE OF THE SEA, The, (JOHNSON v.) See Case No. 7,372.

BELLINGSTEIN, (UNITED STATES v.) See Case No. 14,566.

_____

## Case No. 1,274.

### In re BELLIS et al.

[3 N. B. R. 199, (Quarto, 49;)[1] 3 Ben. 386; 8 Am. Law Reg. (N. S.) 747; 38 How. Pr. 79; 3 Am. Law T. 170.]

District Court, S. D. New York. Sept. 23, 1869.

WITNESS—PRIVILEGED COMMUNICATIONS—ATTORNEY AND CLIENT—TRANSFER OF REAL ESTATE.

A witness, who was a lawyer, being under examination, was questioned touching a certain conveyance made to him by the bankrupt and wife, and a subsequent conveyance by him to the wife, and refused to testify thereon as matter within the privilege of confidential communications between attorney and client. Held, on the facts stated, the questions were proper and must be answered, and are not within such privilege.

[See Ex parte O'Donohoe, Case No. 10,435; In re Woodward, Id. 17,999; In re Adams, Id. 42; In re Aspinwall, Id. 591.]

In bankruptcy. The attorneys for Edward C. Williams, assignee of the said bankrupts, claim the right to examine a witness in the above-entitled cause, concerning a deed executed by James Milligan, one of said bankrupts, and Elizabeth, his wife, to one John T. Gray, between the 1st days of January and July, 1868; the consideration that passed between the said parties to this deed, and the property conveyed; also concerning a deed executed by —— to Elizabeth R. Milligan, wife of James Milligan, between the 1st days of January and July, 1868, the consideration and the property conveyed. On the 8th day of April, 1868, James Milligan and Elizabeth, his wife, executed a deed conveying certain property, situate in the city of Brooklyn, state of New York, to ——, of New York city. On the 10th day of April, 1868, the said —— conveyed the same property to Elizabeth R. Milligan, wife of said James Milligan.

Q. 1. State whether James Milligan, one of the bankrupts, conveyed to you by deed, on or about the 8th day of April, 1868, certain real estate situated in the city of Brooklyn?

Q. 2. State the consideration, if any, given by you to him therefor?

Q. 3. State whether you simultaneously, on or about the same date, by deed, conveyed to Elizabeth R. Milligan, wife of said James Milligan, the same premises so conveyed to

you by James Milligan, on or about the 8th day of April, 1868?

Q. 4. State the consideration, if any, given to you by Elizabeth R. Milligan therefor?

Q. 5. State whether at that time any suit or action at law was pending in relation to the said real estate between the said James Milligan and wife, and any person in which you were attorney or counsel of Mr. and Mrs. Milligan, or whether there has, since that 8th day of April, 1868, been such an action pending in relation to said real estate, in which you were attorney or counsel?

—— is an attorney in all the courts; being called as a witness in the matter of Bellis & Milligan, bankrupts, refuses to testify concerning the above said transfers, on the ground that they were made in the course of his professional business, and are therefore within the privilege of confidential communications between him and his clients.

The examination of ——, as a witness, in this matter, does not involve any statement, confidential or otherwise, made by James Milligan to him, or any advice given by him to his client, the said James Milligan, but merely the part he performed in a business transaction wherein he was grantee in the first place, and grantor in the second, of certain real estate, as hereinbefore mentioned.

In this case the witness claims that the rule which protects professional communications of clients to their attorney, or counsel, extends to all business communications as well as those appertaining to suits in law or equity, or other judicial proceedings. Upon examining the authorities, I find that in the early history of litigation parties prosecuted or defended their suits in person. In the progress of time, as litigation increased, and judicial proceedings became settled and established, men skilled and learned in the law and practice of the courts, were employed to conduct the prosecution and defense of causes. Parties were not then compelled to testify, and hesitated to communicate the facts in relation to their causes to others; to obviate that difficulty, the courts adopted the rule in relation to professional communications of clients to their attorneys, exempting the same from disclosure, etc. Among the early cases upon this subject is that of Annesley's Lessee v. Earl of Anglesea, before the barons of the Irish exchequer. 17 Howell, St. Tr. 1139. The case was most extensively and ably argued, and very elaborately considered by the court, and the conclusion arrived at as to the true origin of the rule in question, may be best stated in the language of Mr. Baron Montenay, who says, at page 1240, "Mr. Recorder has very properly mentioned the foundation upon which it hath been held, and it is certainly undoubted law, that attorneys ought to keep inviolably the secrets of their clients, viz.: That an increase of legal business and the inability of parties to transact that business themselves, made it necessary for them to employ other

_____

[1] [Reprinted from 3 N. B. R. 199, (Quarto, 49,) by permission. 3 Ben. 386, contains only a partial report.]

persons who might transact that business for them. That this necessity introduced with it the necessity of what the law hath very justly established, an inviolable secrecy to be observed by attorneys, in order to render it safe for clients to communicate to their attorneys all proper instructions for the carrying on of those causes which they found themselves under the necessity of intrusting to their care." In the case of Dixon v. Parmelee, 2 Vt. 185, Paddock, Justice, says: "It also became necessary for courts to adopt a rule by way of pledge to suitors, that their secret and confidential communications to their attorneys should not be drawn from them with or without the consent of such attorney." Among the earliest cases to be found on this subject, are Berd v. Lovelace, Cary, 88; Austen v. Vesey, Id. 89; Kelway v. Kelway, Id. 126; Dennis v. Codrington, Id. 143. Solicitors and counsel were excused from testifying on the ground that they were solicitors or counsel in the cause. In Waldron v. Ward, Styles, 449, a witness was offered in evidence to be examined as to some matter "whereof he had been made privy as of counsel in the cause." The courts would not permit the examination. In Sparke v. Middleton, Redley, [1 Keb.] 505, counsel for the defendant was excused from testifying on the ground "that he should only reveal such things as he either knew before he was of counsel, or that came to his knowledge since by other persons." In Cuts v. Pickering, 1 Vent. 197, a witness was called to testify concerning an erasure in a will, supposed to have been made by Pickering. The witness, after the erasure, was retained as his solicitor in the cause. In Vaillant v. Dodemead, 2 Atk. 524, witness was called to prove certain interrogatories. Objections, that his knowledge of the matters was obtained as a clerk in court. Evidence received. Lord Hardwicke says: "That the matters inquired after by the plaintiff's interrogatories, were antecedent transactions to the commencement of the suit." In the then last cited cases, the communications to the respective parties were during the pendency of an action in which they were either attorney, solicitor, or counsel. The same rule is held by the courts in this state, and seems to decide the question in this case. In 17 Johns. 335, the court says: "The privilege, in its most comprehensive sense, is not broad enough to cover collateral facts, the answer to which does not betray any confidential communication between attorney and client."

An attorney or counsel may be called on to testify to a collateral fact within his knowledge, or to a fact which he might know without being intrusted with it by his client. Johnson v. Daverne, 19 Johns. 134, 4th Term, 431. Communications made to an attorney at law with a view to obtain his assistance in the commission of a felony, are not privileged. 3 Barb. 598. In the case of the Rochester City Bank v. Suydam, 5 How. Pr. 254, held: To be brought within its protection, if they do not appertain to any suit or legal proceeding commenced or contemplated, they should be made under cover of an employment strictly professional, and should be such as the business to be done requires to be made. They should also be of a confidential nature, and so considered at the time, and should be shown to have been made with direct reference to the professional business upon which they may be supposed to bear. 17 Howell, St. Tr. 1139; 1 Greenl. Ev. 244; 1 Phil. Ev. 145; 1 Starkie.

In section 26 of the bankrupt act, [March 2,] 1867, [14 Stat. 529,] it is provided that the court may, at all times, require the bankrupt, upon reasonable notice, to attend and submit to an examination on oath, upon all matters relating to the disposal or condition of his property; the bankrupt is, therefore, liable to be called (and in this case has been called), and examined upon these very transactions. He cannot extend an immunity to his attorney which he does not possess himself. The privilege is for the benefit of the client, not the attorney. The authorities upon this point, which I have cited, show that originally no communications were protected as confidential professional communications, except that which related to the management of some suit or judicial proceeding actually pending, or about to be commenced, in some court. Few cases have gone beyond that. Even in the case of Wilson v. Troup, 7 Johns. Ch. 25, 2 Cow. 195, where Haight, an attorney, was retained to conduct the foreclosure of a mortgage by advertisement, under the act concerning the foreclosure of mortgages by advertisement, and it was claimed that Troup employed Haight because Haight was a lawyer, the court of errors evidently considered the relation of the parties in the statutory foreclosure case as that of attorney and client, and therefore the evidence of Haight was not admissible as against Troup, his client. This decision is unquestionably correct, and founded upon the principle, that a statutory foreclosure of a mortgage by advertisement is in the nature of a judicial proceeding. And in Jackson v. Dominick, 14 Johns. 443, the court says, "that a foreclosure under the statute is substantially equivalent to a foreclosure in equity, same in effect." 5 How. Pr. 261.

In this case there was no action pending. The witness drew a deed, conveying certain real estate from James Milligan to himself. He then conveyed the said real estate to Mrs. Milligan, the wife of said James Milligan. There was no action then pending in regard to said real estate, and the question before the court in relation to said real estate now is, whether the legal title of the real estate so conveyed vests in Mrs. Milligan as against the assignee in bankruptcy. Now, the witness is simply called upon to state the

fact of the receiving and the conveying of the real estate, the consideration, if any, he gave or received therefor, and what was said and done on the occasion. His testimony, if given, cannot do injustice to any one. The same facts have been proven by James Milligan in these proceedings. The deeds can be given in evidence, and although Mrs. Milligan cannot be compelled to testify to these facts in bankruptcy, still she can be made to do so by a bill in equity, on the part of the assignee against herself, her husband, and the witness, to set aside said conveyance as fraudulent etc., etc., as against the assignee in bankruptcy. 30 Barb. 506. The court of appeals, in 30 N. Y. 330, Sheldon, Justice, holds, that the rule which protects professional communications of clients to their attorneys or counsel from disclosure, should only extend to such communications as have relation to some suit or other judicial proceeding, either existing or contemplated. The testimony in this case is claimed only for the bankrupt, which brings it within the cases of Griffith v. Davies, 5 Barn. & Adol. 502; Shore v. Bedford, 5 Man. & G. 271; Weeks v. Argent, 16 Mees. & W. 816. In 30 N. Y. 342, Ingram, J., says, "If he was only the counsel of Barney, then the decisions settle, that the disclosures being made in the presence of a third party, they are not privileged." I think that for the purposes of this case Mrs. Milligan, the wife of the petitioner, who received the conveyance from the witness as property to her sole and separate use, must be considered as a third person. I have given the authorities as they were previous to the legislative enactments in this state, in relation to the examination of parties as witnesses, which enactments are as follows: "Any party in any civil suit or proceeding, either in law or equity, had before any court or officers, may require any adverse party, whether complainant, plaintiff, petitioner, or defendant, or any one of said adverse party, any and every person who is beneficially interested in said suit or proceedings, though not nominally as parties, to give testimony under oath in such suit or proceeding; and such adverse party may be examined orally, or under a commission, in the same manner as persons not parties to such suit or proceeding, and who are competent witnesses therein; and such party may be subpoenaed, and his attendance as a witness compelled, or he may be examined by a commission, or conditionally, or his testimony perpetuated in the same manner as any competent witness. The court or officer before whom such suit or proceeding may be had, shall have power to dismiss the bill, petition, or proceeding of any party, or any part thereof, with costs, or nonsuit any party, or strike out, or disregard any defense, or any part thereof, of any party who shall refuse to testify. Any party in any suit or proceeding as aforesaid, shall be required, to en-

title him to examine the adverse party as a witness in any suit or proceeding, to give testimony therein, in the same manner as the attendance of witnesses in ordinary cases." The act of congress, July 16th, 1862, [12 Stat. 588, c. 189,] provides: "That the laws of the state in which the court shall be held, shall be the rules * * * as to the competency of witnesses in the court of the United States."

In this case the rights and privileges of the attorney, and his duty to his clients, are entirely separate, and distinguished from his rights and duties as purchaser and vendor. The transaction in relation to the purchase and sale of the real estate was not a part and parcel of, or in and about any lawsuit in which he was counsel, for either the petitioner or his wife. It therefore stands as a transaction of purchase and sale of real estate, the witness purchasing the real estate of Mr. Milligan, and selling the same to Mrs. Milligan, his wife, two days thereafter. It is claimed by the assignee in bankruptcy, that this was a mere fraud and cover, and intended to evade the act of the legislature of 1849. p. 528, c. 375, viz.: "Any married female may take by inheritance, or by gift, grant, devise, or bequest, from any person other than her husband, and hold to her sole and separate use, and convey, and devise, real and personal property, and any interest or estate therein, and the rents, issues, and profits thereof in the same manner, and with like effect as if she were unmarried, and the same shall not be subject to the disposal of her husband or be liable for his debts."

The assignee also claims that the conveyance from the witness to Mrs. Milligan is void; that it was a mere formal transfer of the real estate from the husband to the wife, using the name of the witness as a mere go-between, so that the conveyance might technically conform to the letter of the statute, and at the same time defeat the spirit and intent of the law; that the wife acquired no legal or vested rights therein by said conveyance other than her contingent right of dower to which she was previously entitled. The courts ever have, and now do hold, that the character of their attorneys should be above reproach and beyond suspicion; that they should never be a party to the perpetration of any fraud, or any act of doubtful integrity, or in the remotest manner violating any of our country's laws. The reasons for this are obvious. They in most instances draft, if they do not make, the laws, and most certainly, "the law makers should not be law breakers." In all well-regulated communities the lawyers are looked up to and respected. It is just and right they should be. They are the best educated men, better versed in the whole policy of our country, are more intelligent, and have broader, and more enlarged views of all the relations of life than any other class of men; therefore it is that the community requires of them, in all

their relations in life, to be entirely free from any wrong or any act of doubtful propriety. All must see the impropriety of lawyers being connected with any conveyance of real estate, the purpose or effect of which would be to evade the provisions of any law. I find that previous to the act of 1847, [Laws N. Y. 1847, c. 280,] and the acts amendatory thereof, an attorney occupied the same relative position as his client in relation to giving testimony, and was privileged only as to matters which his client could not be compelled to disclose. But now, whenever and wherever the client can be compelled as a witness to testify to any fact, then the attorney must also testify; the statutes of this state having abrogated the former common-law rule to that effect. That the witness in this case is not privileged—as the mere act of receiving and conveying the title to real estate about which there has not been any action pending, does not bring him within the former common-law rule as to privileged communications to attorneys and counsel—and since the act of 1847, no such privilege exists which can be claimed for the witness in this case. That the questions are pertinent to the issue, and proper, and the witness must answer.

John Fitch, Register.

BLATCHFORD, District Judge. On the facts stated by the register the five questions set forth were proper, and must be answered by the witness, and are not within the privilege of confidential communications between attorney and client.

[NOTE. For subsequent proceedings in this matter, see Cases Nos. 1,275 and 1,276.]

---

## Case No. 1,275.

In re BELLIS et al.

[4 Ben. 53;[1] 3 N. B. R. 496, (Quarto, 124.)]

District Court, S. D. New York. Feb. 2, 1870.

BANKRUPTCY—BOOKS OF ACCOUNT—SPECIFICATION OF OPPOSITION TO DISCHARGE.

1. Where it appeared that the bankrupts, being merchants, had not for ten months kept a cash-book, and that it was impossible to tell from their books what was their financial condition when they suspended business, held, that a discharge must be refused.

2. A specification of opposition to a bankrupt's discharge, averring that the bankrupt had not kept proper books of account in his business, in that such books do not show what moneys were received, or what disposition was made of them, is sufficiently specific to admit evidence that no cash-book whatever was kept for a time.

[3. Cited in Re Archenbrown, Case No. 505, to the point that the test as to whether books are proper books of account is whether a competent accountant could from the books themselves ascertain the debtor's financial condition.]

[4. Cited in Re Jacobs, Case No. 7,160, as to the power of the court to grant leave to amend defective specifications.]

[See In re Smith, 16 Fed. 465.]

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

[In bankruptcy. Petition for discharge by Garret S. Bellis and James Milligan, bankrupts. Discharge refused.

[For prior proceedings in this matter, see Cases Nos. 1,274 and 1,276.]

J. N. Piper, for creditors.
Abbett & Fuller, for bankrupts.

BLATCHFORD, District Judge. The discharge of the bankrupts is opposed on the ground, as stated in one of the specifications, that, since the passing of the bankruptcy act, the bankrupts, being merchants or tradesmen, have not kept proper books of account in their business, as required by the said act, in that the true or real condition of their affairs and business cannot be ascertained therefrom; and in that such books do not show what moneys, merchandise and property they purchased or received, or what disposition was made of the same; and in that transactions both of moneys received and property sold, amounting to many thousand dollars, are not entered therein; and in that, in other respects, the books are not proper books of account, considering the business and condition of the debtors, or such as would enable a competent person to determine therefrom the real condition of their affairs.

The bankrupts were merchants engaged in business as copartners, from some time in 1866 until June, 1868. The evidence is clear that they kept no cash-book, or account answering the place of a cash-book, between the 2d of March, 1867, and the 2d of January, 1868, and that it is impossible for a competent book-keeper or accountant to ascertain from the books which they kept what was their financial condition when they suspended business, on the 15th of June, 1868. The keeping of a cash-book by merchants such as the bankrupts were, is indispensable. In re Solomon, [Case No. 13,167;] In re Gay, [Id. 5,279;] In re Littlefield, [Id. 8,398.]

The specification, averring as it does, that the bankrupts have not kept proper books of account in their business, in that such books do not show what moneys were received, or what disposition was made of the same, is sufficiently specific to admit evidence that no cash-book whatever was kept for a period of time. In re Littlefield, [Id. 8,398.] Besides, if necessary, an amendment of the specification would, under the circumstances, be allowed. A discharge is refused.

---

## Case No. 1,276.

In re BELLIS et al.

[3 N. B. R. 270,[1] (Quarto, 65;) 1 Am. Law T. Rep. Bankr. 178; 38 How. Pr. 88.]

District Court, S. D. New York. October, 1869.

BANKRUPTCY — EXAMINATION BEFORE REGISTER—COMPELLING BANKRUPT'S WIFE TO TESTIFY—ATTACHMENT.

The usual order and subpoena were issued for the wife of bankrupt to attend before the reg-

---

[1] [Reprinted by permission.]