**217 A.2d 242.**
JANE R. LAPAN *vs.* RICHARD L. LAPAN, *Ex'r, et al.*

MARCH 4, 1966.

PRESENT: Roberts, C. J., Paolino and Joslin, JJ.

JOSLIN, J. In this bill in equity brought by Jane R. Lapan, a minor, by and through her mother and legal guardian Ruth M. Bourne, against the executor under the will and of the estate of Lena Lucy Lapan and the residuary legatees named therein, the complainant seeks specific performance of an agreement which the testatrix is alleged to have made for her benefit and to have the estate impressed with a trust in her favor. After hearing in the superior court on bill, answer and proof, a decree was entered granting the relief prayed for and the cause is now here on the respondent executor's appeal from that decree.

This cause concerns certain surviving members of the family of James A. Lapan who died intestate on September 27, 1955. They include his child Jane R. Lapan, complainant herein; his widow and Jane's mother, who following her husband's death remarried and is now known as Ruth M. Bourne; his parents, Arthur and Lena L. Lapan; and his brother and sisters, Richard L. Lapan, Bernice Ann Conley and Doris Hammons. The respondents named in the bill of complaint are Richard, Bernice and Doris who are residuary legatees under the will of Lena who died on July 23, 1962. Richard is a respondent both in his individual capacity and as executor under his mother's will, and is the only respondent who appealed from the decree of the superior court.

Upon the death of her husband Ruth claimed for herself and for her daughter the proceeds of two insurance policies on his life on which Lena was designated the beneficiary. She also claimed an interest in certain real estate located in the town of Warren, record title to which was then in Arthur's name and had theretofore been in his name and James' as joint tenants.

In due course, and after extensive negotiations participated in by the parties and their respective counsel led to a compromise of the claims, the agreements reached were set out by Arthur and Lena as settlement proposals in a letter signed by them dated January 12, 1956 and addressed to Ruth and Jane. Appended to the letter were copies of reciprocal wills of Arthur and Lena as well as of a deed conveying the Warren property to them. It was contemplated that these instruments would be executed coincident with Ruth's acceptance of the proposals.

Thereafter on January 19, 1956 the parties and counsel met to conclude the settlement. Ruth accepted the compromises individually and for her daughter. Then, and in effectuation of the settlement proposals, Arthur and Lena executed the reciprocal wills, deposited one half of the insurance proceeds to the account of Ruth as trustee for Jane, and Arthur conveyed the Warren property to Lena and himself as joint tenants. The dispositive plan of the wills in substance was that upon the death of the surviving spouse the Warren real estate, if it had not previously been sold, would go to Ruth and Jane as joint tenants, and that the residuary estate would go to Bernice, Richard, Doris, and Jane in equal shares. After execution, the wills were entrusted to Ruth's attorney for safekeeping, and according to the testimony, "to prevent their [Lena and Arthur] changing the Wills."

Arthur predeceased Lena and following her death on July 23, 1962, her will, dated December 12, 1958, was filed for

probate. When Ruth learned that the December 12 will revoked the earlier will of January 19, 1956 and the residuary gift therein made to Jane, she commenced these proceedings in which she seeks specific performance of the agreement of January 19, 1956 to the end that Jane may take a one-quarter share in Lena's residuary estate. The litigation does not concern the Warren real estate which prior to Lena's death had been disposed of conformably to the agreement.

The first question is whether there was consideration for the settlement agreement. The complainant finds it in her forbearance to sue on her claims to the insurance proceeds and to an interest in the real estate. Under our cases, a claim forborne, if premised on an honest belief in its justness, constitutes consideration sufficient to support a promise even though, if prosecuted, it might have been defeated. *DiIorio* v. *DiBrasio*, 21 R. I. 208; *New England Auto Investment Co.* v. *Andrews*, 47 R. I. 299. The respondent, however, disputes the honesty of Ruth's belief. He contends that her claims were so obviously lacking in validity and so frivolous and vexatious as not to be of sufficient dignity to qualify as consideration. The record does not support his contentions for it discloses that the policies were in Ruth's possession, that James had intended to designate his wife and daughter as beneficiaries in the place of his mother, and that he died before he completed "making out the change in the beneficiary on them."

Although if Ruth had claimed the policy proceeds from the insurer she would have been burdened with establishing much more than an unaccomplished or unrealized intention to designate a different beneficiary, *Krajewski* v. *Prudential Insurance Co.*, 54 R. I. 267, *State Mutual Life Assurance Co.* v. *Bessett*, 41 R. I. 54, it does not necessarily follow that the claim she made against Lena was either absurd in fact or obviously unfounded in law. If not forborne, her

suit would have been in equity to compel the exercise of a
reserved power to change the beneficiary, rather than at
law to recover on a promise to pay, a distinction we recog-
nized in *Krajewski* at page 268, and its gravamen would
have been the assertion of a contract with the insured.
*Lovinger* v. *Garvan,* 270 F. 298.

Notwithstanding that there would have been obstacles
to recovery, both on the proof and on the law, Ruth had
in the opinion of Lena's counsel "a very serious claim,"
and we are not prepared to say that she did not honestly
assert it. In these circumstances, Ruth's forbearance to
pursue her claim to the insurance proceeds, notwithstand-
ing that a prosecution thereof might not have met with
success, was sufficient consideration to support Lena's un-
dertakings in the agreement. 1 Williston, Contracts (3d
ed.) §135B, p. 573. Because the claim thus forborne sup-
ports Lena's promises, we need not inquire whether there
was any foundation to her assertion of an interest in the
real estate.

We next inquire whether Lena was contractually free to
exclude Jane as a beneficiary under the residuary clause
of her will. An examination of the language of the Janu-
ary 12 letter, a letter in which Lena and Arthur state as
their purpose the insuring of their own security as well as
of Jane's future, does not point unerringly to a single an-
swer to the question. The letter provides:

"* * * There are 3 documents (1) deed which makes
us two joint tenants in the property (2) will of Arthur
and (3) will of Lena. Their terms are clear and un-
ambiguous. This letter also is to be regarded as an
integral part of our *committments* [sic] *therein under-
taken."* (italics ours)

Considering that language within the context of Lena's
and Arthur's expressed purposes, Ruth argues that the tes-
tamentary dispositions in the will of January 19, 1956 were,
together with the undertakings in the letter, integral parts

of a single settlement agreement and that the "commitments therein [in the will] undertaken" were to devise to Jane an interest in the Warren property, if not sold prior to death, and to leave her a one-quarter share in the residuum. The respondent contends, however, that Lena's commitment was limited to the Warren property and in support of that contention he points to that part of the letter which reads:

> "* * * The title to the [Warren] real estate as indicated in the deed will stand in our name as joint tenants and each of our wills, to be executed we hope in the next few days, will give the real estate to you and Jane. Neither of us intend to change our wills *in this respect* and we assure you hereby that we will not." (italics ours)

The respondent argues that Lena, by specifically undertaking not to change her will *in respect* to the Warren property, by clear implication reserved the right to change her will in all other respects.

We have referred sufficiently to the opposing contentions to make it abundantly evident that the letter on its face, at least as it relates to the extent of Lena's obligation to provide in her will for Jane, is ambiguous and doubtful, and that its pertinent language is fairly and reasonably susceptible of different meanings. In those circumstances it was proper for the trial justice to look beyond the letter itself and as a constructional aid to employ extrinsic evidence relating to the writers' objectives and to consider facts and circumstances relevant to their intentions. *Supreme Woodworking Co. v. Zuckerberg*, 82 R. I. 247; *Goggin v. Goggin*, 59 R. I. 145; *Phetteplace v. British & Foreign Marine Ins. Co.*, 23 R. I. 26; *Continental Illustrating Co. v. Longley Motor Sales Co.*, 43 R. I. 552.

Availing himself of such evidence and for such purposes the trial justice found as a fact that it was Lena's intention

504

to make irrevocable the provisions of her will of January 19, 1956 with respect to Ruth and Jane.

The respondent makes no argument that the finding in this respect was clearly wrong, but instead contends that it should be disregarded first because premised upon parol evidence, a contention already decided adversely to him, and alternatively for the reason that such evidence came principally from the attorney who had represented Lena and Arthur in the settlement negotiations and had prepared the letter and the wills of January 19, 1956. Notwithstanding the failure of the respondents below to interpose objections to that testimony when given, and even though they cross-examined the witness extensively in an attempt to elicit something of value, the respondent here now calls upon the rule forbidding disclosure of confidential communications between client and lawyer and contends that its application barred the use of that testimony in the fact-finding process.

The privilege he now invokes is a personal one. It belonged to Lena during her lifetime and upon her death passed to her successors in interest. Richard as her executor could have claimed it. *Holyoke* v. *Estate of Holyoke*, 110 Me. 469; 8 Wigmore, Evidence (McNaughton rev. 1961), §2329, p. 639. Not having been claimed when the attorney testified, respondent is precluded from invoking it for the first time on appeal. *Balazinski* v. *Lebid*, 65 N. J. Super. 483.

The respondent executor's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*James R. Morriss, Anthony Vacca,* for complainant.

*Pasquale T. Annarummo, Anthony J. Dennis, Jr.,* for respondent ex'r.