**In the Matter of O.P.M. LEASING SERVICES, INC., Debtor.**

**81 B 10533.**

United States Bankruptcy Court, S. D. New York.

June 10, 1981.

Wilmer, Cutler & Pickering, Washington, D. C., for trustee; Stephen F. Black, Washington, D. C., of counsel.

Zalkin, Rodin & Goodman, New York City, for trustee; Henry L. Goodman, New York City, of counsel.

Proskauer, Rose, Goetz & Mendelsohn, New York City, for Singer, Hutner, Levine & Seeman, P. C.; David I. Goldblatt, New York City, of counsel.

Milbank, Tweed, Hadley & McCloy, New York City, for Group of Institutional Creditors; Michael L. Michael, New York City, of counsel.

Winthrop, Stimson, Putman & Roberts, New York City, for Paul Revere Life Insurance Co.; John B. Daniels, New York City, of counsel.

Chester B. Salomon, New York City, for Myron Goodman; Alec P. Ostrow, New York City, of counsel.

Andrew M. Lawler, New York City, for Myron Goodman.

Skadden, Arps, Slate, Meagher & Flom, New York City, for State of Wisconsin Investment Board; Edward J. Yodowitz, New York City, of counsel.

Mudge, Rose, Guthrie & Alexander, New York City, for Bankers Life & Casualty; William Laino, New York City, of counsel.

Sherman & Sterling, New York City, for Pratt & Whitney Aircraft of Canada Ltd. and Corning Glass Works; Paul A. Merolla, New York City, of counsel.

Dreyer & Traub, New York City, for Mordecai Weissman; Martin I. Klein, New York City, of counsel.

Obermaier, Morvillo & Abramowitz, P. C., New York City, for Mordecai Weissman; Elkan Abramowitz and Gilda I. Mariani, New York City, of counsel.

Anderson, Russell, Kill & Olick, P. C., New York City, for O. P. M. Leasing Services, debtor; John H. Gross, New York City, of counsel.

Stroock & Stroock & Lavan, New York City, for First National Bank of St. Paul; Madelaine R. Berg, New York City, of counsel.

## OPINION RE: TRUSTEE'S RIGHT TO ASSERT OR WAIVE ATTORNEY–CLIENT PRIVILEGE

BURTON R. LIFLAND, Bankruptcy Judge.

### I

The issue before the court is whether a Chapter 11 reorganization trustee of a corporate debtor succeeds to the corporation's right to obtain confidential information from the corporation's former counsel and to assert or waive the attorney-client privilege with respect to that information should a demand by third parties for that information be made.

### II

In 1971 O.P.M. Leasing Services, Inc., ("O.P.M.") retained the law firm of Singer, Hutner, Levine & Seeman, P.C. ("Singer Hutner") as its general counsel. In this capacity, Singer Hutner rendered a variety of legal services including legal opinions and preparation of computer leasing, financing and closing documents. (Certain of these transactions are complicated with alleged massive fraud involving sums in excess of $100 million.) Additionally, a member of Singer Hutner served as a director of

O.P.M. until August, 1980.[1] In September, 1980 Singer Hutner resigned as O.P.M.'s counsel, which process was completed in December, 1980.

On March 11, 1981, O.P.M. filed a voluntary petition seeking reorganization relief under Chapter 11 of the Bankruptcy Reform Act of 1978 (the "Code").[2] On March 4, 1981, upon the motion of certain creditors and the consent of the debtor, no opposition being heard, the court directed the United States Trustee[3] for this district to appoint a trustee, §§ 1104 & 151104, to operate the debtor's business, § 1108. A qualified trustee (the "Trustee") was so appointed on March 27, 1981.

Coextensively with its representation of O.P.M., and beyond, Singer Hutner performed legal services for Mordecai Weissman, formerly the President of O.P.M., and Myron S. Goodman, formerly the Executive Vice President of O.P.M., ("Weissman" and "Goodman"), ostensibly separate from O.P.M. This representation ceased March 27, 1981 when Weissman and Goodman each filed a voluntary petition under Chapter 7 (liquidation) of the Bankruptcy Code.[4]

On April 29, 1981, by letter, the Trustee requested Singer Hutner to consult with him and his counsel concerning their past representation of O.P.M. and affiliated companies and to provide them with all information and documents in their possession, custody and control relating to that representation (including matters within the attorney-client privilege). The Trustee prefaced his request by pointing out that under the bankruptcy laws he is: [1] the legal "representative of the estate" (§ 323); [2] responsible for operating O.P.M.'s business (§ 1108); [3] statutorily compelled to "investigate the acts, conduct, accounts, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan [of reorganization]" (§ 1106(a)(3)); [4] unless instructed by the court otherwise, required to "furnish such information concerning the estate's administration as is requested by a party in interest" (§ 704(6)); and, as such, believes he is entitled to the information on a confidential basis within the protection of the attorney-client privilege in order to carry out these statutory duties and determine whether to assert or waive any applicable privilege for the benefit of interested third parties. That same date, the Trustee served Singer Hutner with a subpoena for examination and production of documents under Bankruptcy Rule of Procedure[5] 205.

Counsel for Singer Hutner corresponded on May 1, 1981, and informed the Trustee that Singer Hutner "desires to cooperate with [the Trustee] in the performance of his responsibilities to the fullest extent permitted by law and by the ethical standards and disciplinary rules governing the conduct of lawyers", but since it believed that the Trustee's right to full disclosure was not clear, it had advised its client "that the

---

1. *Cf. Matter of Robinson*, 140 A.D. 329, 125 N.Y.S. 193, 198–199 (1910).

2. Title I of the Bankruptcy Reform Act of 1978 ("B.R.A."), Pub.L. 95–598, 92 Stat. 2683, enacted and codified as Title II of the United States Code, the "Bankruptcy Code" and all section references cited herein may be found in 11 U.S.C. § 101 et seq., unless otherwise indicated. The former bankruptcy law, the Bankruptcy Act of 1898, as amended, was repealed, effective October 1, 1979; however, it continues to govern those cases filed prior to its repeal. B.R.A. §§ 401–403. The former Act also continues to serve as a valuable guide in uncharted areas under the new bankruptcy law.

3. The Southern District of New York is one of ten groups of judicial districts in the experi-

mental United States trustee program designed to relieve bankruptcy judges from some of their former administrative and supervisory roles, including the appointment of trustees. See, § 1501 et seq.; 28 U.S.C. § 581 et seq.; B.R.A. §§ 224, 408.

4. Respectively, case numbers 81 B 10673 and 81 B 10681.

5. The Rules of Bankruptcy Procedure, promulgated by the Supreme Court pursuant to 28 U.S.C. § 2075 for use under the former 1898 Bankruptcy Act, continue to be applicable under the Bankruptcy Code to the extent not inconsistent. See B.R.A. §§ 247, 402, 405.

Code of Professional Responsibility requires [Singer Hutner] to continue to maintain the secrets and confidences of its former clients unless and until there has been a determination of these questions by a court of competent jurisdiction".[6]

To procure a prompt resolution of the controversy, the Trustee proceeded on May 6, 1981 with an Order to Show Cause signed by this court directing Singer Hutner, among others, to demonstrate grounds why the court should not issue an order requiring the law firm to communicate with the Trustee and his counsel as requested.

The Trustee has repeatedly stressed that his request for the information stems not only from his need to use this information to operate and manage O.P.M.'s business, but also from his statutory obligation to conduct an investigation into any misconduct of O.P.M. and render a full report "including any fact ascertained pertaining to fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor, or to a cause of action available to the estate." § 1106(a)(4).

### III

Federal Rule of Evidence [7] 501 provides that privileges "shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience". Among the recognized privileges, the attorney-client privilege, which protects confidential communications, is the oldest known to common law, dating back at least to the early sixteenth century. 8 Wigmore, *Evidence* § 2290 at p. 542 (McNaughton rev. 1961); *Upjohn Co. v. United States,* 449 U.S. 383, 101 S.Ct. 677, 682, 66 L.Ed. 584 (1981). Its genesis and longevity result from its practical rationale. As explained by the Supreme Court in *Upjohn* :

> Its purpose is to encourage full and frank communication between attorneys and

their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer being fully informed by the client. *Id.* 101 S.Ct. at 682. In this most recent exposition by the Supreme Court on the attorney-client privilege, the Court also reaffirmed that a corporation is protected by the attorney-client privilege, though admitting that "complications in the application of the privilege arise when the client is a corporation." *Id.* 101 S.Ct. at 682–683. One such complication is determining who is the corporation qua client.

■ A corporation is an artificial creature of law functioning through representatives. It is axiomatic that the power to invoke or waive the privilege lies in the corporate client acting through its board of directors or management. (See, N.Y.B.C.L. § 701.) Thus, no former or present officer or director can claim or waive the privilege with respect to matters involving the corporation's affairs or embracing his or her role as an officer or director against the corporation's wishes. *In re Grand Jury Proceedings,* 570 F.2d 562, 563 (6th Cir. 1978); *In re Grand Jury Subpoena Duces Tecum,* 391 F.Supp. 1029, 1034 (S.D.N.Y.1975); *United States v. Koenig,* Fed.Sec.L.Rep. (CCH) ¶ 94, 413 (summary) (S.D.N.Y.1974). It further follows that no person who communicates with corporate counsel, including an officer, director, shareholder, or employee of the corporation, concerning the corporation's affairs or their role in the corporation, has a legitimate expectation that the corporation will assert or waive the privilege for such person's benefit. Existing management may change its collective mind, or there may be a change in management, resulting from a sale of the corporation or because of a voluntary or involuntary transfer of control within the corporation.

---

**6.** Cited were DR 4–101 and EC 4–4 of the Code of Professional Responsibility; N.Y. State Bar Assoc. (Comm. on Prof. Ethics) Opinion No. 258 (1981).

**7.** Federal Rules of Evidence apply in bankruptcy proceedings pursuant to Bankruptcy Rule 917, and Fed.R.Evid. 101 & 1101; See, B.R.A. §§ 251, 252, 402, 405.

A second and derivative complication arises in bankruptcy cases.

■ Although not explicit under the former 1898 Bankruptcy Act, the Bankruptcy Code now expressly states that the trustee serves as the "representative of the estate", § 323, which among other things includes "all legal or equitable interests of the debtor in property as of the commencement of the case", as well as the benefit of certain defenses, § 541.[8] The trustee is responsible for operating the debtor's business, § 1108, and his duties are many, § 1106. In brief, as far as a reorganizing corporate debtor is concerned, the trustee possesses and controls its assets, conducts its affairs, and subordinate management, if any, serves at the trustee's pleasure.

■ It is well established that in general a debtor is entitled to the full benefit of the attorney-client privilege in bankruptcy cases, *See e. g., People's Bank v. Brown*, 112 F. 652, 654 (3d Cir. 1902); 2 *Collier on Bankruptcy* ¶ 21.13 at 312–313 (14th ed. 1978); *In Re Fisher*, 51 F.2d 424, 425 (S.D. N.Y.1931); *In Re Aspinwall*, 2 F.Cas. 64 (No. 591) (S.D.N.Y.1874); *In Re Bellis*, 3 F.Cas. 132, 133 (No. 1274) (S.D.N.Y.1869); *See generally* Hoffman, "The Attorney-Client Privilege in Proceedings Under the Bankruptcy Act of 1898 and the Bankruptcy Reform Act of 1978" 53 Am.Bankr.L.J. 231 (1979). Moreover, Section 542(e) of the Bankruptcy Code, governing the turnover of "recorded information" to the estate, specifically recognizes the applicability of privileges.[9]

In an attempt to expand this provision, the drafters of § 542(e) broadly stated that "[t]his duty [of surrendering recorded information to the trustee] is subject to any applicable claim of privilege, such as attorney-client privilege." House Report No. 95–595, 95th Cong., 1st Sess. (1977) 369; Senate Report No. 95–989, 95th Cong., 2d Sess. (1978) 84, U.S.Code Cong. & Admin. News 1978, p. 5787, 6325. Subsequently, this explanation was qualified by a statement that seems to obfuscate rather than clarify the issue:

> The extent to which the attorney-client privilege is valid against the trustee is unclear under current law and is left to be determined by the courts on a case by case basis.

124 Cong.Rec.H. 11097 (Sept. 28, 1978) (Rep. Edwards) S 17, 413 (Oct. 6, 1978) (Sen. DeConcini).

While counsel for Goodman would infer from this legislative history statement "that there is no controlling or persuasive judicial authority on the subject", the court concludes otherwise. First, this statement is primarily a reflection of Fed.R.Evid. 501 and Congress' earlier manifestation not to freeze the law of privilege, but rather "to provide the courts with the flexibility to develop rules of privilege on a case-by-case basis." 120 Cong.Rec.H. 40891 (1974) (Rep. Hungate) "and to leave the door open to change". *Trammel v. United States*, 445 U.S. 40, 47, 100 S.Ct. 906, 910, 63 L.Ed.2d 186 (1980); *Accord Upjohn supra*, 101 S.Ct. at 686 (case-by-case basis). *See generally*, 4 *Collier on Bankruptcy*, ¶ 542.06 at 542–15, 16 (15th ed. 1980) (§ 542(e)). Second, there

---

8. 4 *Collier on Bankruptcy* § 541.25 at 541–91 (15th ed. 1980) comments: "The Code does not define 'defense'. Whether the term 'defense' includes the assertion of waiver of a privilege, such as the attorney-client privilege, is left to be developed by case law." *Id.* at 541–91. The attorney-client privilege is not a defense in the context of that word as used in § 541(e). The "privilege" only protects disclosure of communications, *Upjohn supra* 101 S.Ct. at 685, the effect being the withholding of relevant information from the factfinder, *Fisher v. United States* 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39. The types of "defenses" exemplified by § 541(e) are those reasons in law or in fact that establish why a moving party's

cause of action or recovery should be defeated. This conclusion is supported by the well known basic rules of statutory construction: *Noscitor A Sociss* (known by its associates) and *Ejusdem Generis* (of the same class).

9. \*\*\*

(e) Subject to any applicable privilege, after notice and a hearing, the court may order an attorney, accountant, or other person that holds recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs, to disclose such recorded information to the trustee.

is now additional authority supporting earlier (possibly overlooked) authority.

In reviewing the authorities cited by the parties, and on the basis of the court's independent research, giving due consideration to the facts and circumstances of this case, the court must agree with the trustee that the persuasive weight of authority impels the granting of the order prayed for.[10]

In *In re Continental Mortgage Investors*, No. 76–593–5 (D.Mass. July 31, 1979) (Skinner, D. J.), Chapter X trustees sought authority to waive the attorney-client privilege of CMI for the purpose of permitting the Securities and Exchange Commission (who was conducting an investigation) and other parties to interrogate former attorneys of CMI and to inspect correspondence between these attorneys and former management and principal shareholders of the debtor. Counsel for the present CMI directors opposed the trustee's application, asserting that the directors alone had the power to waive the privilege. This position, along with the director's analogy of the privilege to various personal rights retained by an individual debtor, was rejected. Explaining, that "[a] proceeding under Chapter X differs from an individual bankruptcy in that it is a proceeding which among other things contemplates the transfer of management functions to the Chapter X trustees", the court held: "The decision to waive a corporation's attorney-client privilege is ordinarily a management decision. Under Chapter X I have no doubt that the

right to make such decisions passes to the Chapter X trustees." [11]

The case of *In re Amjoe, Inc.*, Bankr.L. Rep. (CCH) ¶ 66, 131, 11 C.B.C. 45, (M.D. Fla.1976) reached the same result through somewhat different analysis. In *Amjoe* the elected trustee of an adjudicated corporate bankrupt instituted an adversary proceeding in which he attempted to depose the debtor's former attorney, but he was stymied. An officer of the debtor had invoked the attorney-client privilege, and the lawyer declined to testify as a result.

Following an extensive analysis of the derivation, purpose and policy of the attorney-client privilege, Bankruptcy Judge Paskay concluded that, as applicable to corporations, the privilege was not designed primarily as a safeguard of personal liberties, but as a means of assisting in the assertion or defense of property rights. *A fortiori*, the court reasoned, "if the right sought to be asserted or protected no longer belongs to the bankrupt because title to the same vested in the Trustee by virtue of adjudication, there is no valid or logical reason why the right to assert the privilege and the corresponding right to waive same should not be vested in the Trustee." The court then held that "... the right sought to be asserted clearly belongs to the Trustee and not to the adjudicated bankrupt corporation," noting that "[t]o refuse the Trustee the right to waive the privilege would obviously frustrate and seriously hinder the very person for whose benefit the privilege was designed and would assist and protect a

---

**10.** In addition to the authority discussed *infra*, the Trustee also analogizes to other areas involving successive interests. See *Lapan v. Lapan*, 100 R.I. 498, 217 A.2d 242; 246 (1966) (representative of decedent's estate succeeds to attorney-client privilege); *Walton v. Van Camp*, 283 S.W.2d 493, 499 (Mo.1955); *Buuck v. Kruckenberg*, 121 Ind.App. 262, 95 N.E.2d 304, 308 (1951) (grantee of real property receives attorney-client privilege of grantor to extent necessary for realization of granted interest); *United States v. DeLillo*, 448 F.Supp. 840 (E.D.N.Y.1978) (attorney-client privilege passes to pension fund's current board of trustees even though only one member was on board at time of privileged communications). *See generally*, Hoffman, *supra*, 53 Am.Bankr. L.J. at 240–250.

See also, *In re Calestini*, 321 F.Supp. 1313, 1316 (N.D.Cal.1971) (right to legal file of attorney retained by bankrupt in pre-bankruptcy matters passes to trustee); *In re Decker*, 295 F.Supp. 501, 513 (W.D.Va.1969) (right of action against an attorney retained by bankrupt in pre-bankruptcy matters for abuse of attorney-client relationship [i.e.: attorney-client privilege] vests in the trustee) *aff'd Woodson v. Gilmer*, 420 F.2d 378 (4th Cir. 1970), *cert. denied* 399 U.S. 928, 90 S.Ct. 2244, 26 L.Ed.2d 795.

All are cases persuasive, directly or indirectly, of the Trustee's position.

**11.** The SEC unqualifiedly supported the trustee's position.

person who has no right to invoke the privilege to begin with. *Id.* at 75, 984 (CCH), 11 C.B.C. at 49.

Ruling *en banc*, the Supreme Court of Colorado in *Weck v. District Court*, 161 Colo. 384, 422 P.2d 46 (1967) 31 A.L.R.3d 552 (Anno.), held that a trustee in bankruptcy has the power to waive a statutory accountant-client privilege (a privilege whose existence is based upon the same rationale as that of the attorney-client privilege). This holding was based upon the recognition that the Bankruptcy Act "confers broad powers upon a trustee in bankruptcy [and] [i]n a wide area such trustee takes the place and exercises the office of the directors." *Id.*, 422 P.2d at 48. See *Amjoe supra* at 75, 984 (CCH), 11 C.B.C. at 49–50 (citing *Weck* with approval).

Significantly, Supreme Court Standard 503(c) is in accord with the aforecited cases.[12] It provides:

(c) Who may claim the privilege.—The privilege may be claimed by the client, his guardian or conservator, the personal representative of a deceased client, or the successor, *trustee*, or similar representative of a corporation, association, or other organization, *whether or not in existence.* The person who was the lawyer at the time of the communication may claim the privilege but only on behalf of the client. His authority to do so is presumed in the absence of evidence to the contrary.

56 F.R.D. 183, 236 (1972) (emphasis added). Although the Proposed Federal Rules of Evidence were never adopted by Congress as rules, they remain "standards" and Proposed Rule 503(c) has been cited as a "fairly authoritative source of the federal common law". *United States v. DeLillo*, 448 F.Supp. 840, 842 (E.D.N.Y.1978). More particularly,

the court in *In re Grand Jury Proceedings*, 434 F.Supp. 648 (E.D.Mich.1977), *aff'd* 570 F.2d 562 (6th Cir. 1978) explained:

The [attorney-client] privilege has been fully and adequately expressed in proposed Rule of Evidence 503

\*   \*   \*   \*   \*   \*

The fact that Congress did not enact this rule into law when it adopted the Federal Rules of Evidence does not lessen the value of the rule as a source to define the scope of the privilege. \* \* \*

The draft of Rule 503 referred to was not rejected by the Congress because of any decision that it was in error on the merits, but on the theory that rules of privilege should not be enunciated by rule. What more accurate expression of the principles of the common law and of the application of reason and experience could exist than a draft that was developed by a representative committee of bench, bar and scholars, twice published and commented on by the bench and bar, adopted by the judicial conference and finally forwarded by the Supreme Court for promulgation.

*Id.* at 649, 650 N.1; *See also United States v. Mackey*, 405 F.Supp. 854, 857–58 (E.D.N.Y.1975) (Weinstein D. J.); *Trammel, supra*; see generally 2 Weinstein *Evidence* ¶ 503(c)[01] (1980) at pp. 503–66–68.

The court has also been cited to two cases that seemingly reach an opposite conclusion; however, when examined, both fail to find support in reasoned authority. Further, even if correct under their facts, they would not molest the instant reorganization trustee's right to succeed to the privilege. Each situation's unique facts and circumstances must be treated *sui generis* under the mandated case-by-case approach.

---

**12.** To the same effect is proposed Code of Evidence for the State of New York § 503(c), presently under consideration by the New York State Law Revision Commission.

(c) Who may claim the privilege. The privilege may be claimed by the client, his guardian or conservator, the personal representative of a deceased client, or the successor, trustee, or similar representative of a corporation, association, or other organization, whether the client making the communication is still in existence or not. The person who is the client's lawyer or who was the lawyer or the lawyer's representative at the time of the communication may claim the privilege but only on behalf of the client. His authority to do so is presumed in the absence of evidence to the contrary. If no person entitled to assert the privilege is present, the court has discretion to exclude evidence of confidential communications when disclosure would be harmful to the client's interest.

In *In re Hy-Gain Electronics Corp.*, 11 B.R. 119 (D.Neb. 1978), the bankruptcy court declined to follow *Amjoe* and *Weck*. Resting its decision narrowly on § 70(a)(3), (former) 11 U.S.C. § 110(a)(3), (now § 541(b)), which vests in the trustee as part of the property of the estate of the bankrupt "powers which he might have exercised for his own benefit ...", the court held that the trustee did not succeed to the privilege because the right to waive or claim the attorney-client privilege is not a form of property.

While it may be true that "the privilege is itself a privilege and not a form of property" this abject syllogism neither distinguishes, dilutes or substitutes for the broader analysis exercised in *Amjoe* and *Weck*. *Amjoe* explained that the privilege logically follows the property, whose title is vested in the trustee by operation of law. And, *Weck* stressed the *overall* statutory scheme and the synergy of the trustee's many broad powers. The *Hy-Gain* court's narrow focus led it astray.

Similarly, in *Ross v. Popper*, 9 B.R. 485 (S.D.N.Y.1980), a United States magistrate indicated that a liquidation trustee, See § 702, does not succeed to the power to waive the attorney-client privilege on behalf of the bankrupt corporation, but rather "that the only proper person to decide whether there should be a waiver of attorney-client privilege respecting transactions that took place prior to bankruptcy is the bankrupt corporation itself, by its authorized officer or officers". *Id.* at 487. The basis for the decision was the magistrate's conclusion that "[a] trustee in bankruptcy primarily represents the interests of the general creditors whose interests are, of course, not only opposed to the interest of the bankrupt, but also are opposed to the interests of secured creditors." *Id.*

Whether or not I agree that this last statement correctly reflects the law concerning the role of a liquidation trustee, it certainly does not reflect the role of a reorganization trustee who is "a fiduciary with an obligation to treat all parties fairly."

*Sherr v. Winkler*, 552 F.2d 1367, 1374 (10th Cir. 1977). Further, as explained earlier, the decision to assert or waive the privilege lies with management of the corporation and not mere officers. Moreover, the magistrate's statements were unnecessary to his decision, and thus *dicta*, since the magistrate held that the debtor's officers had waived the privilege.

It should be further noted that neither *Ross v. Popper* nor *Hy-Gain* appear to have considered Standard 503(c), nor did they consider the broad role and duties of a reorganization trustee. Both cases were approved by the district court without opinion.

Counsel for Weissman and Goodman attack the Trustee's, as well as the court's, position on several grounds.

Primarily, they attempt to distinguish *Continental Mortgage Investors, supra*, on the grounds that O.P.M. is not a public corporation and that in substance this Chapter 11 is not a reorganization but a liquidation [13] in disguise, with a trustee acting only in an investigatory manner.

This second argument is wholly without foundation and is amply refuted by the numerous orders signed by this court pertaining to O.P.M.'s active business operations (which utilize upwards of sixty employees), the testimony provided at the hearing, and the Trustee's Supplemental Affidavit. In short, this trustee is performing the full panoply of duties under Sections 1106 and 1108.

The first ground is similarly without merit. Although one of the primary concerns of Chapter X was the protection of public investors, *SEC v. American Trailer Rentals*, 379 U.S. 594, 614, 85 S.Ct. 513, 524, 13 L.Ed.2d 510 (1965); *Posi-Seal International, Inc. v. Chipperfield*, 457 F.2d 237, 239 (2d Cir. 1972), this was not its only concern. Counsel for Weissman and Goodman have overly magnified this statement by *American Trailer* out of context.

**13.** Liquidating plans are permitted under Chapter 11. § 1123(b)(4).

First, in seeking Chapter X relief under the former Bankruptcy Act, there was no prerequisite that the debtor be traded publicly or that its stock be widely held. It was adapted to any corporation with a complicated debt structure and especially well suited where interested parties and public creditors were widely scattered. Its scheme contemplated a trustee's oversight; and evidence of management misdeeds, for which an accounting might be due, or a need for new management, was an important consideration. Closely held or private corporations were not strangers to Chapter X.

■ Without any equivocation, the facts in this case present what would have been a classic Chapter X case. This mamouth Chapter 11 is far from "summary" in nature, the characterization given to old Chapter XI, an alternative to Chapter X. More than mere adjustment of unsecured debts is contemplated by O.P.M. This is a case where there was clearly a need for a disinterested trustee to make a study and conduct a full examination of the debtor's financial ills and management, including an independent investigation of all possible causes of action against past management. Here there are charges far and wide of "management wrongdoings" and the greater protection afforded by the appointment of a disinterested trustee in Chapter X is consequently in place. In fact, the appointment of a trustee was consented to by the debtor.[14] See, *American Trailer, supra* at 604, 606, 614–615, 85 S.Ct. at 519, 520, 524–525.

Counsel for Goodman also points to an ongoing investigation by the United States Attorney's Office for this district and grand jury investigation, which will relate to transactions that are the subject of the Trustee's inquiry, as factors that militate against the Trustee's succession to the privilege. Specifically, he points out that although the Trustee desires to fulfill his

§ 1106 investigative duty, the privilege is effective even in pending grand jury proceedings, citing Fed.R.Evid. 1101(d)(2); *United States v. Mackey*, 405 F.Supp. 854 (E.D.N.Y.1975); U.S.Const. Amend. V; *United States v. Johnson*, 319 U.S. 503, 510–512, 63 S.Ct. 1233, 1236–1238, 87 L.Ed. 1546 (1943); *Cobbledick v. United States*, 309 U.S. 323, 327, 60 S.Ct. 540, 542, 84 L.Ed. 783 (1940).

This argument fails to appreciate the issue at hand. The question is who is the corporation qua client. Clearly, the privilege does not belong to a grand jury, and the specific applicability of the privilege in grand jury proceedings is etched in a rule. Nor is the bankruptcy court "impinging" on the attorney-client privilege, *cf. Natta v. Hogan*, 392 F.2d 686, 691 (10th Cir. 1968) (patent case); *Civil Aeronautics Board v. Air Transport Associations*, 201 F.Supp. 318 (D.D.C.1961) (C. A. B. Administrative hearing), but is determining where it roots in the context of a Chapter 11 reorganization proceeding supervised by a consented-to trustee. That the Trustee as one of his duties must conduct an investigation in order to identify and marshall the assets of the estate, does not detract from his ability to succeed to the privilege. Neither the bankruptcy laws nor the attorney-client privilege was intended to cloak corporate officials of a debtor with immunity from possible wrongdoing.

Lastly, counsel for Weissman opines, and counsel for Goodman agrees, that Weissman is the only person who can waive the attorney-client privilege on behalf of O.P.M. He explains that 1) O.P.M. is a wholly-owned subsidiary of Cali Trading International, Ltd. ("Cali"); 2) Weissman and Goodman each own one half of the voting securities of Cali; and, 3) Mr. Weissman was entrusted to vote Goodman's shares. Consequently, he concludes, the privilege belongs to Weissman who declines to waive it.

---

14. The Trustee suggests that the debtor's support for appointment of a trustee may be interpreted as a consent by the debtor to provide the trustee with access to information and documents in possession of the debtor's former lawyers, and, that once the trustee is in place, the debtor is estopped to withdraw such access. This position has much merit and serves to further bolster the right of the trustee to wear the mantle of "privilege, assertion or waiver" under the facts of this case.

The absurdity of this logic can be seen by following it through to its conclusion. Weissman is himself in bankruptcy. Under the Bankruptcy Code, his interest in Cali passes to his own trustee. This right, (the right of the trustee to vote the stock) is separate and apart from any right the individual's trustee may have to consult with the individual's attorney. Thus, assuming for the purpose of this exercise only, counsel for Weissman is correct, Weissman no longer has the privilege and his objection is thereby rendered baseless. Moreover, neither trustee for the estates of Weissman or Goodman, who were both served by O.P. M.'s Trustee with the May 6, 1981 Order to Show Cause, objected to the O.P.M. Trustee's requested order.

## IV

On the basis of the facts and circumstances of this case and aforecited authorities, giving full consideration to both the objectives of the attorney-client privilege and bankruptcy administration, and upon the equities involved herein, the court grants the requested order [15] of the Trustee, including the additional decretal paragraph requested by certain institutional creditors, consented to by the Trustee. The order is annexed hereto.

## ORDER

Upon the Application of James P. Hassett, Trustee (the "Trustee") of O. P. M. Leasing Services, Inc. ("OPM"), for an Order authorizing and directing Singer, Hutner, Levine & Seeman, P. C. ("Singer Hutner") to communicate with and provide information and documents to the Trustee, and a hearing having been held before this Court on May 20, 1981, and due deliberation being had thereon and sufficient cause appearing therefor, it is

ORDERED, that the aforesaid Application is granted; and it is further

ORDERED, that the Trustee shall be deemed, by operation of law, to succeed to the right to assert or waive any applicable attorney-client privilege between OPM and its affiliated companies and Singer Hutner and its personnel; and it is further

ORDERED, that Singer Hutner and its officers, partners, associates, employees, and agents are authorized and directed, on a confidential basis and within the attorney-client privilege, to communicate with the Trustee and his counsel concerning its past representation of OPM and affiliated companies and to provide all information and documents in its possession, custody and control relating to that representation; and it is further

ORDERED, that this Order is without prejudice to the right of any party:

(i) to seek a declaration that the information and documents obtained hereunder are not privileged;

(ii) to maintain that any privilege that may be applicable to said information and documents has been waived; or

(iii) to seek discovery of said information or documents in the possession of any party.

---

15. Counsel for Goodman also objected to the proposed order on the ground that the application provides no safeguards for the preservation of the attorney-client privilege with respect to the individual representation provided to his client. Such protection is implicit. Singer Hutner may only reveal privileged communications concerning its representation of O.P.M. and affiliated companies. To the extent legal services were provided wholly separate and apart from O.P.M. (e. g. personal estate planning) this remains protected. This does not mean, however, that where in form services were provided to Weissman or Goodman that in fact and substance are services to O.P.M. that the individuals have any privilege. See also, *Supreme Court Standard 503(d)(5)*, 56 F.R.D. 183, 236 (1972); *Garner v. Wolfinbarger*, 430 F.2d 1093, 1103 (5th Cir. 1970), *cert. denied* 401 U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 323 (1971); *Valente v. PepsiCo, Inc.*, 68 F.R.D. 361, 368 (D.Del.1975) (joint client exception to attorney-client privilege).