Andrew ROSS and Elinor Ross, as Trustees of The Andrew Ross Studio, Inc. Profit Sharing Plan, Plaintiffs,

v.

Wolf A. POPPER, Wolf A. Popper, Inc., Jerome Stern, William Burke, Burlant & Lehrer, Paul Burlant and Stanley Lehrer, Defendants.

Wolf A. POPPER, Third Party Plaintiff,

v.

Owen KILGANNON, Richard Hickey, Hyman Joseph, Oswald Ruggero and Ralph Burke, Third Party Defendants.

77 Civ. 4533 (GLG).

United States District Court, S. D. New York.

July 11, 1980.

Zalkin, Rodin & Goodman, Andrew D. Gottfried, New York City, for plaintiffs, Andrew Ross and Elinor Ross.

Rogers, Hoge & Hills, Herbert C. Ross, Jr., New York City, for defendants, Paul Burlant and Stanley Lehrer.

Lewis Novod, New York City, for defendant-third party plaintiff, Wolf A. Popper.

Schwartz & Sachs, P. C., Carle Place, N. Y., for defendants, Jerome Stern and William Burke.

Kane, Kessler, Proujansky, Preiss & Nurnberg, P. C., New York City, for third party defendant, Ralph Burke.

D'Amato & Lynch, New York City, for third party defendants, Owen Kilgannon and Richard Hickey.

Morris Pottish, New York City, for third party defendants, Hyman Joseph and Oswald Ruggero.

## MEMORANDUM AND ORDER

RABY, United States Magistrate:

This Memorandum and Order relates to a motion filed June 16, 1980 on behalf of

defendant-third party plaintiff Wolf A. Popper, for an order determining:

"a. That any attorney-client privilege heretofore existing between [attorneys] Hyman Joseph and Oswald Ruggero individually and as [the law firm of] Joseph & Ruggero and North Broadway Funding Corp., its officers and shareholders, be determined to be waived and of no force and effect;

"b. That any attorney-client privilege heretofore existing between [attorneys] Paul Burlant and Stanley Lehrer individually and as [the law firm of] Burlant & Lehrer and North Broadway Funding Corp., its officers and shareholders, be determined to be waived and of no force and effect;

"c. That Hyman Joseph, Oswald Ruggero, Paul Burlant and Stanley Lehrer be directed at their examinations before [trial] to testify as to all communications and matters heretofore claimed as privileged had with or concerning North Broadway Funding Corp., its officers and shareholders."

Basically, the problem here presented is one resulting from a stated sense of apprehension on the part of the attorneys hereinabove mentioned, Hyman Joseph, Oswald Ruggero, Paul Burlant and Stanley Lehrer, that considerations of professional ethics prohibit them from disclosing any confidential communications had by them with North Broadway Funding Corp., or its officers, absent the receipt by them of an express waiver of attorney-client privilege as to said communications on the part of North Broadway Funding Corp., through an authorized officer. While recognizing that the attorney-client privilege is a privilege of the client, and not that of the attorney, the above-mentioned attorneys feel, quite properly, I think, that there should be some indication on the part of the client whose rights are affected as to whether the client desires to assert attorney-client privilege before the requested disclosures are made.

The corporation involved in this situation is, as the motion papers indicate, North Broadway Funding Corp., which is presently undergoing bankruptcy proceedings in the District Court for the Eastern District of New York, Bankruptcy Docket No. 77 B 1716 E.D.N.Y. Attached to the motion papers is a copy of a letter date May 21, 1980, from North Broadway Funding Corp.'s Trustee in Bankruptcy, Timothy W. Sullivan, Esq., in which Mr. Sullivan states the following:

"Based on the advice of counsel I hereby waive any rights that may have accrued to me to invoke the attorney-client provision [sic] regarding communications, correspondence, etc. concerning the above said bankruptcy [sic] and between Paul Burlant and Stanley Lehrer, and between Joseph Ruggerio [sic] and Leo Goldsmith [sic]."

The document just quoted is submitted by the moving party as a predicate for his contention that since the duly constituted Trustee in Bankruptcy of North Broadway Funding Corp. has thereby purported to waive any claim of attorney-client privilege inuring in favor of North Broadway, any further refusal on the part of Messrs. Joseph, Ruggero, Burlant or Lehrer to testify as to confidential communications between them and North Broadway is without proper legal foundation. The movant also contends that William Burke and Jerome Stern, the principal officers of North Broadway, have waived attorney-client privilege to the extent that it relates to them individually. The latter contention is based upon an appearance in open Court before me, of Neil R. Flaum, Esq., of the firm of Schwartz & Sachs, P. C., One Old Country Road, Carle Place, New York, 11514, in which Mr. Flaum confirmed that his clients, William Burke and Jerome Stern, as principal officers of North Broadway Funding Corp. prior to the filing by that corporation of its petition in bankruptcy, *had declined to assert any claim of attorney-client privilege with respect to the matter before me.*

The attorneys opposing the granting of the relief sought by this motion do not, as I see it, seriously question their obligation to divulge any confidential communications that may have occurred between them and Messrs. William Burke and Jerome Stern in

the latter's capacity as *individuals,* as distinguished from their capacity as principal officers and representatives of the corporation. It is my assumption, however, that the essence of any communications between the attorneys involved and Messrs. Burke and Stern involves the activities of the corporation of which they were principal officers, i. e., North Broadway Funding Corp.

Addressing themselves to North Broadway as such, the attorneys opposing this motion urge, primarily, that the purported waiver by North Broadway's Trustee in Bankruptcy is so unclear in its tenor that it cannot properly be viewed as representing an unequivocal intention on the part of the Trustee to grant a general waiver of attorney-client privilege respecting the prebankruptcy activities of the corporation.

I must certainly agree that the language of the purported waiver leaves a great deal to be desired. The document relied upon by the moving party, contains at least two significant apparent typographical errors, i. e., the word "provision" instead of "privilege", also the word "bankruptcy" in place of the word "bankrupt". Furthermore, in purporting to identify the attorneys who are the subject of the communication, the Trustee erroneously designates Messrs. Hyman Joseph and Oswald Ruggero respectively as "Joseph Ruggerio" and "Leo Goldsmith".

With equal vigor, the attorneys involved urge that even assuming, *arguendo,* that North Broadway's Trustee in Bankruptcy fully intended, on behalf of the Corporation, to waive its attorney-client privilege, such purported waiver is legally ineffective.

Neither the supporting Memorandum of the moving party nor the opposing papers contain any citation of authority dealing directly with the question of whether a trustee in bankruptcy, who, to use the general language contained in a great many cases, "steps into the shoes of the bankrupt" (see, e. g., *Cissell v. American Home Assurance Company,* 521 F.2d 790 (6th Cir. 1975) and *Bayliss v. Rood,* 424 F.2d 142 (4th Cir. 1970) has the specific power to waive what would otherwise be an attorney-client privilege running in favor of the bankrupt corporation based upon communications between the bankrupt and its attorneys prior to the event of bankruptcy. My own research has similarly failed to locate any case dealing precisely with this problem. Accordingly, I must consider it as *res nova.*

While it is true that a trustee in bankruptcy is necessarily required to step into the shoes of a bankrupt for certain purposes, I do not believe that he can do so for all purposes without involving himself in various serious conflicts of interest. A trustee in bankruptcy primarily represents the interests of the general creditors whose interests are, of course, not only opposed to the interests of the bankrupt, but also are opposed to the interests of secured creditors. Thus, for example, by purporting to waive attorney-client privilege for the benefit of secured creditors a trustee in bankruptcy might be acting against the interests of general creditors as well as the interests of the bankrupt itself.

The origin of the claim of attorney-client privilege involved in this case as to North Broadway Funding Corp. would of necessity have occurred upon the occasion of the communications between North Broadway and its attorneys *prior to bankruptcy.* In that context, it seems to me almost axiomatic that the beneficiary of such communications is *the bankrupt corporation itself,* whose interests are quite obviously adverse to the interests of the trustee in bankruptcy, representing the general creditors. It therefore seems to me to follow that the only proper person to decide whether there should be a waiver of attorney-client privilege respecting transactions that took place prior to bankruptcy is the bankrupt corporation itself, by its authorized officer or officers.

I have given consideration to the concept that a waiver, in these circumstances, should be given by *both* the trustee and the bankrupt. Further reflection, however, convinces me that such concept creates an inherent absurdity; for if the bankrupt corporation's principal officer is willing, on behalf of the bankrupt corporation, to

waive an attorney-client privilege that arose in the course of pre-bankruptcy communication, there would be no reason to seek the "concurrence" of the trustee in bankruptcy, since the matter is not really the proper concern of the trustee. Conversely, and as hereinabove indicated, if the bankrupt desires to preserve the attorney-client privilege, I think that it would be improper for the trustee to dishonor that request.

■ For the reasons hereinabove indicated, I must conclude that the purported "waiver" of attorney-client privilege interposed in this case in the form of the May 21, 1980 letter from North Broadway's Trustee in Bankruptcy does not, as a matter of law, have the effect of waiving any attorney-client privilege that arose by reason of communications between North Broadway and its counsel prior to bankruptcy.

■ That is not the end of this matter, however; for it is equally clear that the principal officers of North Broadway, who were fully aware of this motion and who were represented at the argument thereof by counsel, made no attempt to assert any affirmative claim of privilege whatsoever on behalf of themselves as individuals or on behalf of the bankrupt corporation of which they are officers, I must therefore conclude that there is no proper basis on the part of the attorneys opposing this motion to resist disclosure of their communications with North Broadway on ground of attorney-client privilege. As I have already stated, the privilege is that of the client, i. e., the bankrupt corporation, through its officers; and those officers, though given an opportunity to do so, have not asserted any such claim of attorney-client privilege.

The attorneys to whom this motion is addressed, i. e.; Hyman Joseph, Oswald Ruggero, Paul Burlant and Stanley Lehrer, are accordingly directed to appear and be examined before trial concerning any communications of a confidential nature that they may have had with North Broadway through its authorized principal officers.

IT IS SO ORDERED. Execution of this Order will, however, be stayed pending review of this decision by Judge Goettel provided that an application for such review, pursuant to Title 28 U.S. Code § 636, is filed within 10 days from the date hereof.

The following papers considered by me in connection with this motion are returned to the Clerk herewith for refiling:

1. Motion on behalf of defendant-third party plaintiff, Wolf A. Popper, filed June 16, 1980 (Document No. 101);

2. Memorandum in Support of above Motion, filed June 16, 1980 (Document No. 100);

3. Memorandum on behalf of defendants Burlant and Lehrer in Opposition, filed June 27, 1980 (Document No. 108);

4. Affidavit in Opposition of Herbert C. Ross, Jr., filed June 27, 1980 (Document No. 107);

5. Opposing Affidavit of Morris Pottish, filed June 17, 1980 (Document No. 102);

6. Reply Affidavit of Louis Novod, sworn to July 1, 1980, filed July 11, 1980 (Document No. 114).