In re O. P. M. LEASING SERVICES,
INC., Debtor.

Mordecai Weissman and Myron S.
Goodman, Appellants.

No. 81 Civ. 3846.

United States District Court,
S. D. New York.

July 23, 1981.

Dreyer & Traub, Obermaier, Morvillo & Abramowitz, P. C., New York City, for appellant Mordecai Weissman; Martin I. Klein, Betty I. Braverman, Elkan Abramowitz, Gilda I. Mariani, New York City, of counsel.

Chester B. Salomon and Andrew M. Lawler, Jr., P. C., New York City, for appellant Myron S. Goodman; Dennis E. Milton, David M. Green, Alec P. Ostrow, New York City, of counsel.

Wilmer, Cutler & Pickering, Washington, D. C., for appellee James P. Hassett, Trustee of O. P. M. Leasing Services, Inc.; Arthur F. Mathews, Stephen F. Black, Stephen P. Doyle, Kathy B. Weinman, Washington, D. C., of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

This is an appeal from an order of Bankruptcy Judge Lifland entered on June 10, 1981 authorizing and directing the law firm of Singer, Hutner, Levine & Seeman, P. C. ("Singer Hutner") on a confidential basis and within the attorney-client privilege to communicate with and provide all information and documents in its possession concerning its past representation of the Chapter 11 debtor, O. P. M. Leasing Services, Inc. ("OPM"), to appellee James P. Hassett, the reorganization trustee. The Bankruptcy Court held that the trustee, by operation of law, succeeded to OPM's right to obtain such information and its power to assert or waive any applicable attorney-client privilege. The appeal is taken by two former officers and executives of OPM who seek a reversal of the order or, in the alternative, a remand for further consideration by the Bankruptcy Judge.

OPM was a large computer leasing and financing firm. On March 11, 1981, OPM filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Reform Act of 1978 and initially was continued in the operation and management of its business as a debtor-in-possession. Soon thereafter, on March 24, 1981, on application of creditors who charged OPM with fraud, the Bankruptcy Court ordered the appointment of a trustee pursuant to 11 U.S.C. § 151104(a). The United States trustee was granted all the powers of a trustee under § 1106(a)[1] and the authority to operate the debtor's business pursuant to § 1108.[2] The trustee has continued operation of the debtor's business and at the time the order that is the subject of this appeal was entered he employed some seventy persons with a bi-weekly payroll of $70,000.

When the Chapter 11 petition was filed, OPM was a wholly-owned subsidiary of Cali Trading International Ltd. ("Cali"), a closely-held corporation. Fifty percent of Cali's shares were owned by appellant Mordecai Weissman and fifty percent by appellant Myron S. Goodman. A shareholders' agreement between these two individuals entrusted the voting rights of 100% of the Cali shares to Weissman. Weissman was the President of OPM and Goodman was its Vice President. On March 27, 1981, Weissman and Goodman each filed voluntary petitions for liquidation under Chapter 7 of

---

1. Section 1106(a)(3) in pertinent part provides: "A trustee shall ... except to the extent that the court orders otherwise, investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan." 11 U.S.C. § 1106(a)(3).

2. Section 1108 provides: "Unless the court orders otherwise, the trustee may operate the debtor's business." 11 U.S.C. § 1108.

the Bankruptcy Reform Act. Prior to such filings, each resigned as an officer and director of OPM and Cali. Thus, at the time the trustee was appointed, OPM was without a Board of Directors.

From 1971 to 1980, Singer Hutner served as outside general counsel to OPM and as such provided a variety of legal services including rendering legal opinions, drafting documents and negotiating agreements. An officer of Singer Hutner served as a director of OPM until August 1980. In September 1980 Singer Hutner resigned as OPM's counsel and completed the process of withdrawal in early December of that year. Singer Hutner during this time also represented Weissman and Goodman in their individual capacities. This representation ended on March 27, 1981, when each filed his voluntary petition under Chapter 7. The legal services allegedly rendered to the individuals, which were unrelated to the corporation, concerned estate planning for Weissman and Goodman, their ownership of a majority interest in a bank in Louisiana and the sale of that interest.

By letter dated April 29, 1981, the trustee requested that Singer Hutner consult with him and provide him with certain information and documents relating to Singer Hutner's past representation of OPM including information and documents within the attorney-client privilege. The trustee also served Singer Hutner with a subpoena for examination and production of documents under Rule 205(e) of the Rules of Bankruptcy Procedure. The stated purpose of these requests was to obtain information on a confidential basis within the attorney-client privilege, to which the trustee asserted he was entitled as the legal representative of the debtor,[3] in order to permit the trustee to carry out his statutory duties to investigate and manage the affairs of the corporation,"[4] and to enable him as authorized by statute to "furnish . . . information concerning the estate and the estate's administration as is requested by a party-in-inter-

est."[5] Among interested parties was the United States Attorney for the Southern District of New York who had convened a grand jury to investigate the activities of OPM and its principals, Weissman and Goodman. The United States Attorney had served a grand jury subpoena duces tecum calling for the production of OPM records during its operation prior to filing the Chapter 11 petition and had requested the trustee to waive the attorney-client privilege in order to obtain documents required in connection with the investigation. Other interested third parties were creditors seeking information with respect to the conduct and affairs of OPM during the time Weissman and Goodman were its operating officials. The information sought relates to charges that the corporate affairs were conducted in an illegal and fraudulent manner which may warrant action against those who may have been engaged in the alleged illegal conduct.

On May 1, 1981, Singer Hutner responded to the trustee's request by indicating its willingness to cooperate with the trustee but stressing its duty to preserve the privileged confidences of its former client unless directed to reveal them by a court of competent jurisdiction. On May 6, 1981, the trustee filed with the Bankruptcy Court an application for an order requiring Singer Hutner to communicate with and provide documents to the trustee as requested. The motion was supported by creditors of OPM who made charges of fraud in its management. Appellants opposed the application, contending that the trustee did not succeed to the attorney-client privilege of the debtor and that appellant Weissman was the sole person authorized to waive the privilege. This contention, as advanced by appellants, is that Cali, as the sole stockholder of OPM, possesses the right to waive or to assert the privilege in the absence of management and that Cali's vote with respect thereto would be cast by its sole voting

---

**3.** 11 U.S.C. § 323(a) ("The trustee in a case under this title is the representative of the estate.")

**4.** 11 U.S.C. §§ 704(3), 1106(a)(3) and 1108.

**5.** 11 U.S.C. § 704(6).

shareholder, Weissman. On June 10, 1981, the Bankruptcy Court granted the trustee's application.

▮ To put the matter in proper focus, it is noted that OPM, "[a] corporation, like any other 'client,' is entitled to the attorney-client privilege" and may waive or assert it.[6] So, too, it is beyond dispute that the privilege rested with OPM prior to the filing of the Chapter 11 petition and the exercise or waiver of the privilege was subject to decision by its management. It is equally clear that a debtor in bankruptcy is entitled to the benefit of the attorney-client privilege.[7] The basic issue then is who has the right to waive or assert the privilege on behalf of the debtor—the trustee or Weissman and Goodman who, at the time the trustee was appointed, no longer were directors or executives of OPM and who owned no shares in OPM. As already noted, the trustee's demand upon the former attorneys for OPM for information within the protection of the attorney-client privilege was based upon his status as the legal "representative of the estate" (§ 323) and his statutory duties [1] to investigate "any fraud, dishonesty, incompetence, mismanagement, or irregularity in the management of the affairs of the debtor" (§ 1106(a)), [2] to operate OPM's business (§ 1108), [3] to "investigate the acts, conduct, accounts, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan" of reorganization (§ 1106(a)(3)), and [4] to "furnish such information concerning the estate's administration as is requested by a party in interest"

unless otherwise instructed by the court (§ 704(6)).

▮ In view of the provisions of the Bankruptcy Act referred to above which designate the trustee as the legal representative of the estate and vest in him broad powers to manage, conduct and investigate the affairs of the debtor, including authority to make information available to third parties in interest, I hold that the debtor's attorney-client privilege passes by operation of law to its trustee and that no individual officer or director prior to the appointment of the trustee has or retains any power with respect to the debtor's attorney-client privilege. Once the right is vested in the trustee, the exercise or waiver of the attorney-client privilege is a matter of his sole judgment and is not subject to veto by third parties who may have conveyed information to corporate counsel prior to the filing of the petition and may possibly be affected by the trustee's determination. One who communicates with corporate counsel, including an officer, director, shareholder or employee by virtue of his or her role in the corporation, must recognize that it is the corporation, as the client, which may waive or assert the privilege. As the appellants themselves stress and as the Supreme Court has noted, the attorney-client privilege is deeply rooted in common law as the oldest of the recognized privileges[8] and it has been suggested that it parallels a constitutional right imbedded in our Constitution.[9] Once it is found that the right vests in the trustee of the debtor, it should not be subject to third party veto any more than a constitutional right is shared with others.

▮ The appellants, although they acknowledge that ordinarily officers and oth-

6. *Bell v. Maryland*, 378 U.S. 226, 263, 84 S.Ct. 1814, 1834, 12 L.Ed.2d 822 (1964) (Appendix I to Opinion of Douglas, J.)

7. *See, e. g., People's Bank v. Brown*, 112 F. 652, 654 (3d Cir. 1902); *In re Fisher*, 51 F.2d 424, 425 (S.D.N.Y.1931); *In re Aspinwall*, 2 Fed.Cas. 64 (No. 591) (S.D.N.Y.1874); *In re Bellis*, 3 Fed.Cas. 132, 133 (No. 1274) (S.D.N.Y.1869); *In re O. P. M. Leasing Serv., Inc.*, 13 B.R. 54 at 58 (S.D.N.Y.1981); 2 *Collier on Bankruptcy* ¶ 21.13 at 312–313 (14th ed. 1978).

8. *Upjohn Co. v. United States*, 449 U.S. 383, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981).

9. *See, e. g.*, Seidelson, *The Attorney-Client Privilege and Client's Constitutional Rights*, 6 Hofstra L.Rev. 693, 727 n.77 (1978); Note, *The Attorney-Client Privilege: Fixed Rules, Balancing, and Constitutional Entitlement*, 91 Harv.L. Rev. 464, 485–86 (1977).

er employees of a corporation who communicate with a corporate attorney do not have "a legitimate expectation that the corporation will assert or waive the privilege" for their individual benefit,[10] urge that a different rule should prevail because OPM was a closely-held corporation and that they, as shareholders of OPM (actually of Cali, the parent corporation) were the communicants, as managers, of privileged information. However, it matters not whether the corporation, which is entitled to the attorney-client privilege, is closely held, has a small number of shareholders, or has its shares widely distributed—it is the corporation and not any individual who is entitled to the attorney-client privilege with power to waive or assert it.[11]

■ To grant to shareholders or managers of a so-called closed corporation the corporation's right to privilege in effect amounts to a veto of the trustee's right thereto. To deny the trustee access to confidential information in the possession of the former counsel by permitting such shareholders the right to assert the privilege would result in the debtor's privilege being used against its own interests and obstruct the trustee's statutory duties to investigate and manage the affairs of the debtor. In this case, Weissman and Goodman, who claim that they alone are entitled to the corporate privilege, are fully protected, as the Bankruptcy Judge made clear, as to their individual attorney-client privilege based on their personal representation by Singer Hutner. Moreover, they have, as is their absolute right, asserted their Fifth Amendment privilege against self-incrimination in the bankruptcy proceeding. However, to allow them in addition to use the

privilege that belongs to the debtor not only would serve to impede the trustee in discharge of his duties with respect to the debtor, but would tend to impede the grand jury investigation into the conduct and affairs of the debtor during the period they were principals and deprive interested third parties of information to which they may be entitled. Communications by personnel of the corporation to Singer Hutner pertaining to corporate affairs prior to the filing of the petition were the privilege of the corporation; they were not the officers' or managers' personal privilege.

While few precedents are directly on point, the case law supports the conclusion that the right to exercise a debtor's attorney-client privilege passes to the trustee. In *In re Continental Mortgage Investors,*[12] the court in a Chapter X proceeding under the old Bankruptcy Act held that the decision to waive a corporation's attorney-client privilege is a management decision and the right to make such decisions passes to a Chapter X trustee.[13] In *In re Amjoe, Inc.,*[14] the court reasoned that in the corporate context the attorney-client privilege was designed not primarily to safeguard personal liberties but as a means of asserting and defending property rights. Since a trustee in bankruptcy assumes all property rights of the debtor, the court held that this privilege should also be exercised by the trustee. Finally, in *Ex Parte Fuller,*[15] the Supreme Court held that the books of a bankrupt partnership must pass to the trustee even when information contained in them incriminates a partner. If the interests of a trustee in obtaining this information can overcome even a partner's claimed constitu-

10. Brief of Appellant Weissman at 9.

11. *See Diversified Indus., Inc. v. Meredith,* 572 F.2d 596, 611 n.5 (8th Cir. 1977); *United States v. Piccini,* 412 F.2d 591, 593 (2d Cir. 1969); *United States v. De Lillo,* 448 F.Supp. 840, 841 (E.D.N.Y.1978); *In re Grand Jury Proceedings,* 434 F.Supp. 648, 650 (E.D.Mich.1977), *aff'd,* 570 F.2d 562 (6th Cir. 1978); *In re Grand Jury Subpoena Duces Tecum,* 391 F.Supp. 1029, 1034 (S.D.N.Y.1975).

12. No. 76–59 (D.Mass. July 31, 1979).

13. *See also Weck v. District Court,* 161 Colo. 384, 422 P.2d 46 (1967) (trustee in bankruptcy has power to waive accountant-client privilege recognized under state law since trustee under old Bankruptcy Act takes the place and exercises the office of the directors).

14. ¶ 66,131, 11 C.B.C. 45 (M.D.Fla.1976).

15. 262 U.S. 91, 43 S.Ct. 496, 67 L.Ed. 881 (1923).

tional interests in avoiding self-incrimination, *a fortiori*, a trustee's interests in obtaining information belonging to a debtor corporation can overcome a former manager's, director's, or officer's claim to the corporation's attorney-client privilege.

The two cases concluding that a bankruptcy trustee does not succeed to the exercise of a debtor corporation's attorney-client privilege cannot stand up to this weight of authority. In *In re Hyman Electronics Corp.*,[16] the court held that a trustee does not succeed to the debtor's attorney-client privilege because the right to waive or assert the privilege is not a form of property, and thus not properly part of the debtor's estate over which the trustee exercises power. The oversimplicity of this analysis is apparent in light of the reasoning of the *Amjoe* opinion, which, as noted, discussed the purpose of the privilege in the corporate context to preserve and defend property rights. In *Ross v. Popper*,[17] the Magistrate observed in dictum that the only proper person to decide whether to waive a bankrupt corporation's attorney-client privilege regarding matters that took place prior to bankruptcy is the bankrupt corporation itself, by its authorized officer or officers, since "[a] trustee in bankruptcy primarily represents the interests of the general creditors whose interests are, of course, not only opposed to the interest of the bankrupt, but also are opposed to the interests of secured creditors."[18] Since this Court cannot agree with the above-stated premise that a reorganization trustee, who is "a fiduciary with an obligation to treat all parties fairly,"[19] has interests that conflict with those of the debtor, the above conclusion must also be rejected.

Further support for this Court's conclusion can be found in the Supreme Court's Proposed Federal Rule of Evidence 503(c), which, in discussing who may claim the attorney-client privilege, provided in relevant part:

> The privilege may be claimed by the client, his guardian or conservator, the personal representative of a deceased client, or the successor, *trustee*, or similar representative *of a corporation*, association, or other organization, *whether or not in existence*.[20]

The Proposed Rule clearly contemplated exercise of a bankrupt corporation's attorney-client privilege by its trustee. Although this Proposed Rule was never adopted by Congress out of a desire not to freeze the law of privilege but to leave development and expansion of the privilege to judicial determination,[21] it remains a "fairly authoritative source of federal common law."[22]

In an effort to avoid the conclusion that the right to assert or waive the debtor's attorney-client privilege rests with the trustee, appellants cite § 542(e) of the Bankruptcy Code, which provides:

> *Subject to any applicable privilege*, after notice and a hearing, the court may order an attorney, accountant, or other person that holds recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs, to disclose such recorded information to the trustee. (emphasis added)

The legislative history indicates that this subsection was designed to deprive accountants and attorneys of the leverage they held under state law liens to receive payment in full ahead of other creditors when the information they hold is necessary to

16.  No. Bk–78–0–26 (D.Neb. Sept. 27, 1978).

17.  9 B.R. 485 (S.D.N.Y.1980).

18.  *Id.* at 487.

19.  *Sherr v. Winkler*, 552 F.2d 1367, 1374 (10th Cir. 1977); *see In re O. P. M. Leasing Serv., Inc.*, 13 B.R. 54 at 61 (S.D.N.Y. 1981).

20.  56 F.R.D. 183, 236 (1972) (emphasis added).

21.  *Trammel v. United States*, 445 U.S. 40, 47, 100 S.Ct. 906, 910, 63 L.Ed.2d 186 (1980).

22.  *United States v. De Lillo*, 448 F.Supp. 840, 842 (E.D.N.Y.1978). *See also In re Grand Jury Proceedings*, 434 F.Supp. 648, 649, 650 n.1 (E.D.Mich.1977), *aff'd*, 570 F.2d 562 (6th Cir. 1978); *United States v. Mackey*, 405 F.Supp. 854, 857–58 (E.D.N.Y.1975).

the administration of the estate, but that it was not intended to undercut any applicable privilege such as the attorney-client privilege.[23] However, while the legislative history evinces a congressional concern not to impinge "any applicable privilege," neither this history nor the language of the statute asserts that anyone claiming to speak for the debtor is entitled to assert the attorney-client privilege against the trustee. Indeed, statements made by members of Congress in reporting on the effect of this subsection specifically deny any attempt to create an attorney-client privilege assertable on behalf of the debtor against the trustee:

> The extent to which the attorney client privilege is valid against the trustee is unclear under current law and is left to be determined by the courts on a case by case basis.[24]

Clearly, if an intention of Congress can be determined from the ambiguous language employed, it was not to preclude the trustee from exercising the debtor's attorney-client privilege but to reserve this issue to the courts.

Appellants also rely on this language in the legislative history to argue that the issue of the trustee's right to exercise the debtor's attorney-client privilege must be decided on a "case by case basis," that is, taking into account each situation's unique facts and circumstances and not based on the status of a trustee as the legal "representative of the estate." However, while a case-by-case approach clearly was intended to govern resolution of the scope of communications protected by the privilege and the application of the privilege in given situations, as indeed is required by the spirit of Rule 501 of the Federal Rules of Evidence,[25] such an approach is neither required nor desirable once it is determined who is entitled to exercise the privilege. Moreover, even if a case-by-case approach were assumed to be mandated for determining the appropriate person to exercise a debtor's privilege, the balancing of competing interests evaluated by the Bankruptcy Judge in his opinion below fully justifies a finding that the trustee is entitled to exercise the debtor's attorney-client privilege in this particular case.

The order of the Bankruptcy Judge is affirmed.

---

23. S.Rep.No.95–989, 95th Cong., 2d Sess. 84 (1978); H.Rep.No.95–595, 95th Cong., 1st Sess. 369–70 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787.

24. 124 Cong.Rec. S17,413 (Oct. 6, 1978) (Sen. De Concini); 124 Cong.Rec. H11,097 (Sept. 28, 1978) (Rep. Edwards).

25. *See Upjohn Co. v. United States,* 449 U.S. 383, 101 S.Ct. 677, 686, 66 L.Ed.2d 584 (1981); *Trammel v. United States,* 445 U.S. 40, 47, 100 S.Ct. 906, 910, 63 L.Ed.2d 186 (1980); 120 Cong.Rec. 40891 (Dec. 18, 1974) (Rep. Hungate).