### In re VANTAGE PETROLEUM CORP., Debtor.

### George W. HUDTWALKER, Jr., Trustee for Vantage Petroleum Corp., Plaintiff,

### v.

### VAN NOSTRAND & MARTIN, a Partnership, Defendant.

**Bankruptcy No. 882–81962–20. Adv. No. 883–0797–20.**

United States Bankruptcy Court, E.D. New York, at Westbury.

April 11, 1984.

David Clayton, Clayton, Miller & Mayer, Hauppauge, N.Y., for Sebastian Lombardo.

David Green, Chester Salomon, P.C., Robert Polstein, Polstein, Ferrara & Campriello, New York City, for Lawrence and Cheryl Iorizzo.

Thomas Fitzpatrick, New York City, for Future Positions Corp.

Robert B. Marcus, Mineola, N.Y., for Blue Bell Trading Co., Inc.

Joseph Carlino, P.C., Mineola, N.Y., for defendant.

Ira Lee Sorkin, Squadron, Ellenoff, Plesent & Lehrer, Abraham Backenroth, Harvis & Zeichner, New York City, for trustee.

## DECISION AND ORDER

ROBERT JOHN HALL, Bankruptcy Judge.

A hearing was held on February 21, 1984 at which time the Court considered whether an order should be entered, directing the defendant law firm to turn over to the Trustees of Vantage Petroleum Corp., Lawrence and Cheryl Iorizzo, Bay Isle Oil Co., Inc., Sans Souci Corp., Page Motors Inc., Larch Oil Co., Inc., and Larch Resources, Inc. ("the debtors"), all files and records maintained by the defendant on behalf of the following entities:

Houston Holdings, Inc.

Lawrence and Cheryl Iorizzo

Future Positions Corp.
Bay Isle Oil Co., Inc.
Larch Oil Co., Inc.
Larch Resources, Inc.
Sans Souci, Corp.
Chieftan Oil Corp.
Page Motors
Mattituck Terminal, Inc.
Octane Petroleum Corp.
Chermar Oil Co., Inc.
Lance Oil Company
P.C.I., Nationwide Distributors
Kembet Oil Co., Inc.
Island Petroleum
Salan Management Co., Inc.
All partnerships, corporations or other entities owned or controlled, directly or indirectly, by LAWRENCE IORIZZO and/or CHERYL A. IORIZZO or entities in which they have an interest

### Procedural Background

On August 2, 1982 an involuntary chapter 7 petition was filed against Vantage Petroleum Corp. ("Vantage"). On August 24, 1982 Vantage converted the proceeding to a voluntary case under chapter 11. On September 8, 1982, after a two-day trial, the Court appointed George W. Hudtwalker, Jr., chapter 11 Trustee in the Vantage case. At the trial, the petitioning creditors established that Lawrence and Cheryl Iorizzo (the "Iorizzos") were the owner-operators of Vantage, and that under their management, Vantage had defrauded several of its creditors out of millions of dollars.

On February 17, 1983, the Vantage Trustee filed an adversary proceeding against the Iorizzos, and Bay Isle Oil Co., Inc., Sans Souci Corp., Page Motors Inc., Larch Oil Co., Inc., and Larch Resources, Inc. (the "five debtor corporations"), and other entities, to recover assets allegedly belonging to Vantage. The next day, an order was entered attaching all of the property of the Iorizzos and the five corporations. On May 27, 1983, before the adversary proceeding could be heard, the Iorizzos filed a voluntary chapter 11 petition. On June 30, 1983, the five debtor corporations filed voluntary

chapter 11 petitions. Upon motions made by creditors of the Iorizzos and the five debtor corporations, the Court appointed Thomas LoPresto as chapter 11 Trustee for the estates of the Iorizzos and the five debtor corporations.

The two Trustees of the several estates joined forces in an effort to efficiently and expeditiously locate and recover assets of the debtors, which they alleged had been concealed by the Iorizzos. On December 7, 1983, the two Trustees commenced three adversary proceedings against the Iorizzos, the law firm of Van Nostrand & Martin, and other defendants seeking the recovery of assets owned by the debtors.

On the same day that the three adversaries were commenced, the Trustees made ex parte applications for orders of attachment and temporary restraining orders against transfer of the defendants' property. After an ex parte hearing, the Court granted the Trustees' applications with respect to all of the defendants except Van Nostrand & Martin and one other defendant. The Court ruled that based upon the ex parte hearing, the circumstances did not warrant restraining transfer of the assets of the law firm. Similarly, the Court believed it improper to grant an order attaching the property of the law firm. The Court did, however, order the law firm to turn over all of the files, documents and records relating to the financial affairs of the various debtors, maintained by Van Nostrand & Martin on behalf of the aforementioned entities.

In each adversary proceeding, the Court signed an Order to Show Cause which scheduled a hearing for December 9, 1984 to consider whether a preliminary injunction should be issued and whether the attachment orders should be confirmed. On December 9, 1983, the Court ruled that the Order to Show Cause with respect to Van Nostrand & Martin had not been properly served in accordance with the Order to Show Cause, and that therefore the Order to Show Cause was jurisdictionally defective. The Court thus declined to consider the Trustees' application for a writ of at-

tachment with respect to the law firm's property and assets. The Court believed, however, that the Trustees had a right under section 542(e) of the bankruptcy code to the files relating to the debtors. The Court therefore directed the defendant to take no action to destroy or dispose of the files and records, and to turn them over to the Trustees. The Trustees thereafter settled upon the defendant a proposed order embodying the Court's oral direction. The defendant and several of the entities filed objections to the Trustees' proposed order and requested a hearing on their objections. Several of the entities settled counter-orders which provided for a restraining order against the defendants' transfer and removal of the files and records, but which did not provide for turnover of the records to the Trustees.

On February 10, 1984, the Court issued its own Order scheduling a hearing to consider the objections which had been filed. In addition, the Order restrained the defendant from disposing of or removing the files and records.

The objections filed were based upon the following three grounds: 1) the Trustees' order did not reflect the Court's oral directions; 2) the Trustees' order stated that it was based upon New York's attachment statutes and that such basis was inappropriate for an order directing turnover of files and records; and 3) the attorney-client privilege protected disclosure of the files and records.

The first two grounds are correct in that the Trustees' order provided for the turnover pursuant to section 6211 of New York's Civil Practice Law and Rules, while the Court directed the turnover pursuant to section 542(e) of the Bankruptcy Code. These objections, however, are formalistic and merely require modification of the Trustees' order. On the other hand, the assertion of the attorney-client privilege requires a more detailed consideration of the rights of the various parties involved.

*Issues Raised at the Hearing*

Section 542(e) provides:

*Subject to any applicable privilege,* after notice and a hearing, the court may order an attorney, accountant, or other person that holds recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs, to disclose such recorded information to the trustee.

11 U.S.C. § 542(e) (Supp. IV 1980) (emphasis added).

At the hearing held on February 21, 1984, Joseph Carlino, Esq., the attorney for Van Nostrand & Martin, asserted the attorney-client privilege on behalf of the entities listed in the proposed turnover order. Further, Mr. Carlino stated that Van Nostrand & Martin was mandated to refuse to turn over the records based upon the privilege of the law firm's clients, and that the law firm's failure to do so would subject the law firm to proceedings for ethical misconduct.

Ira Lee Sorkin, Esq., representing the Trustees, contended that the attorney-client privilege was the client's to waive or assert. Therefore, Mr. Sorkin argued, unless the entities themselves came forward to affirmatively assert the privilege, Van Nostrand & Martin could not refuse to turn over the records.[1] Thus, the first issue to be raised was whether the attorney who represented the clients could assert the privilege on behalf of the clients.

The second issue was raised by Mr. Sorkin, who argued that those entities asserting the privilege had the burden of demonstrating that the privilege applied to the particular records in the possession of Van Nostrand & Martin. Mr. Sorkin indicated that the records could have been turned over to the law firm in an attempt to conceal them from the Trustees and the debtors' creditors. Mr. Carlino countered by contending that there had been no such

---

1. This issue may have become moot as to some of the entities involved, because the attorneys for the Iorizzos, the five debtor corporations, and Future Positions asserted the privilege on behalf of those entities.

showing and that it was the Trustees' obligation to overcome his client's assertion of the privilege. Thus, the second issue to be raised was whether the party seeking access to the records has the burden of proving that the privilege is inapplicable, or whether the party asserting the privilege must show that the privilege applies.

The third issue was raised by Abraham Backenroth, Esq., attorney for the Trustees, who argued that as to Vantage and the five debtor corporations, the Trustees had the power to waive the attorney-client privilege. In response, Mr. Carlino observed that a corporation acts through its board of directors and that to waive the attorney-client privilege, a majority vote of the board was required. In support, the attorney for the Iorizzos, David Green, Esq., represented that his clients were officers of the five debtor corporations, and that where officers of corporate debtors currently exist, a trustee does not have the power to waive the privilege. Thus, the third issue is whether the Trustees have the power to waive the privilege on behalf of Vantage and the five debtor corporations.

The final issue was raised by Robert Polstein, Esq., one of the attorneys for the Iorizzos. Mr. Polstein contended that the personal communications of the Iorizzos were privileged under the fifth amendment, and that the Iorizzos asserted their fifth amendment privileges as to confidential communications in the hands of Van Nostrand & Martin. Mr. Polstein asserted that the fact the Iorizzos gave the communication to their attorneys did not constitute a waiver under *United States v. Fisher*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976).[2] Mr. Polstein argued that the Court's restraining order prevented Van Nostrand & Martin from returning the documents to the Iorizzos where the Iorizzos

could validly prevent disclosure of the documents.

## Discussion

■ The first issue is easily dispensed with. Under both federal law and New York law, an attorney is prohibited from divulging confidential communications in the absence of a waiver by his client. Under federal law, not only is an attorney permitted to invoke the privilege in behalf of his client, but he is under a duty to assert the privilege. *Republic Gear Co. v. Borg-Warner Corp.*, 381 F.2d 551, 556 (2d Cir.1967); *In re Grand Jury Subpoena Duces Tecum*, 391 F.Supp. 1029, 1033 (S.D. N.Y.1975). Similarly, section 4503(a) of New York's Civil Practice Law and Rules provides that in the absence of a waiver by his client, an attorney is prohibited from divulging confidential communications. N.Y.C.P.L.R. § 4503(a) (McKinney Supp. 1983–84). Van Nostrand & Martin's assertion of the attorney-client privilege is clearly a valid assertion.

■ The second issue, on the other hand, must be decided in favor of the Trustees. Van Nostrand & Martin's bare assertion of the privilege does not create any shield against the Trustees. The burden is upon the party asserting the privilege to establish that all of the requirements for application of the privilege have been met. *In re Federal Copper of Tennessee, Inc.*, 19 B.R. 177, 181 (Bkrtcy.M.D.Tenn.1982); *In re Blier Cedar Co., Inc.*, 10 B.R. 993, 999 (Bkrtcy.D.Me.) (citing *United States v. Gurtner*, 474 F.2d 297, 298 (9th Cir.1973) and *United States v. Osborn*, 561 F.2d 1334, 1339 (9th Cir.1977)).

■ Furthermore, the claimant must demonstrate that each essential element of

**2.** The *Fisher* Court held that the compelled production of documents from an attorney does not implicate a person's fifth amendment privilege. 425 U.S. at 401, 96 S.Ct. at 1576. In addition, the Court held that where the documents would be unobtainable from the client by

reason of the fifth amendment privilege, the documents would be unobtainable from an attorney to whom the documents were given for the purpose of securing legal advice. *Id.* at 404–05, 96 S.Ct. at 1577–78.

the privilege is satisfied. *Blier*, 10 B.R. at 999. The elements of the privilege that have been consistently applied in the federal courts are those described in *United States v. United Shoe Machinery Corporation*, 89 F.Supp. 357, 358–59 (D.Mass. 1950).

  1. The asserted holder of the privilege is or sought to become a client;

  2. The person to whom the communication was made (a) is a member of the bar of a court or his subordinate, and (b) in connection with his communication is acting as a lawyer;

  3. The communication relates to a fact of which the attorney was informed (a) by his client, (b) without the presence of strangers, (c) for the purpose of securing permanently, either (1) an opinion of law, (2) legal services, or (3) assistance in some legal proceeding, (d) and not for the purpose of committing a crime or tort; and

  4. Privilege has been (a) claimed, and (b) not waived by the client.

The privilege having been claimed, the Court must hold a hearing to provide those asserting the privilege the opportunity to prove that the first three elements of the privilege are applicable to each document requested.

■ The third issue, involving element 4(b) above, is whether the Trustees' have the power to waive the privilege on behalf of Vantage and the five debtor corporations. If the answer is in favor of the Trustees, then as to these corporate records there would be no further inquiry into the privilege, and the Court would order an immediate turnover. For the following reasons the Court concludes that the Trustees are not entitled to waive the corporate debtors' privilege, provided that the parties attempting to assert the privilege prove that these corporations have officers and/or directors currently in office.[3]

In a previous motion brought by the Trustees for a turnover order, the Court ruled that the Trustees were the only parties who could validly claim or waive an attorney-client privilege for the corporate debtors. The Court so ruled based upon the Second Circuit's decision in *In re O.P.M. Leasing Services, Inc.*, 670 F.2d 383 (2d Cir.1982); *aff'g* 13 B.R. 64 (S.D.N.Y. 1981). In *O.P.M. Leasing*, the Second Circuit held that where there were no directors or officers of the debtor, the power to waive the attorney-client privilege "adheres to the Trustee by virtue of the nonexistence of any other entity authorized to so act." 670 F.2d at 387. In addition, the Court held that shareholders of the debtor did not constitute such entities. *Id.* The *O.P.M. Leasing* Court expressly stated that in reaching its decision, it did not need to decide whether to adopt the broad holding of the district court that the attorney-client privilege of a corporate debtor passed by operation of law to its trustee in bankruptcy.[4] *Id.* at 386.

■ In the time since this Court's ruling on the previous turnover motion, the Seventh Circuit decided a case where the trustee sought to waive the corporate debtor's privilege, even though the record did not show that the debtor was currently without a board of directors and/or corporate officers. *Commodity Futures Trading Com'n v. Weintraub*, 722 F.2d 338, 341 (7th Cir.1983); *contra Citibank, N.A. v. Andros*, 666 F.2d 1192 (8th Cir.1982). In response to the instant motion, the attor-

**3.** At the hearing, Mr. Green represented that there are plenty of officers of the five debtor corporations. At the next hearing on this matter, Mr. Green and any other interested parties will be given the opportunity to present evidence as to their existence.

**4.** The *O.P.M. Leasing* Court also found it unnecessary to accept the district court's emphasis on property concepts as the basis for holding that the attorney-client privilege in the corporate context passed to the trustee. Furthermore, the Court stated it need not hold that the duties of a trustee do not place him in conflict with the interests of the debtor. *Id.* at 386 n. 2.

ney for the Iorizzos and the five corporate debtors represented that there are officers of the five debtor corporations. The Court in *Weintraub* held that where the corporate debtor currently had corporate officers, the debtor's attorney-client privilege did not pass to the trustee in bankruptcy.[5] *Id.* at 342–43.

■ The duties of a trustee in a chapter 11 case are enumerated in 11 U.S.C. § 1106. This enumeration can not be construed, through the express language or by implication, to strip the debtor and its directors and officers of all legal rights and responsibilities. The power to waive or assert the attorney-client privilege is not expressly dealt with.

The right to assert an attorney-client privilege as to pre-petition matters should be, perhaps, one legal right of the debtor to remain unscathed after a trustee has been appointed. The Second Circuit in *O.P.M. Leasing*, 670 F.2d at 386, cited *Ross v. Popper*, 9 B.R. 485, 487 (S.D.N.Y.1980), for the proposition that the trustee's interest in privileged communications may be adverse to the interests of the corporation. The Court in *Ross* had reasoned as follows:

> The origin of the claim of attorney-client privilege involved in this case as to North Broadway Funding Corp. would of necessity have occurred upon the occasion of the communications between North Broadway and its attorneys prior to bankruptcy. In that context, it seems to me almost axiomatic that the beneficiary of such communications is the bankrupt corporation itself, whose interests are quite obviously adverse to the interests of the trustee in bankruptcy, representing the general creditors. It therefore seems to me to follow that the only prop-

er person to decide whether there should be a waiver of attorney-client privilege respecting transactions that took place prior to bankruptcy is the bankrupt corporation itself, by its authorized officer or officers.

*Id.*

The situation in which a corporation finds itself after a trustee is appointed to manage its affairs, is in many respects analogous to the situation where the corporation is under criminal investigation. In the former situation, the trustee is under obligation to "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor ...." 11 U.S.C. § 1106(a)(3). The bankruptcy cases involved herein clearly demonstrate that the Trustee's relationship to the debtor corporation may be as adversarial as the relationship between the prosecutor and the subject of a criminal investigation. It would be as anamolous to allow the prosecutor to waive the subject's privilege, as it would be to allow the trustee to waive the debtor corporation's privilege. Certainly there exist inherent differences in the two relationships; a major one being that a trustee becomes accountable for managing the debtor's property. Nevertheless, the policy concerns behind the existence of the attorney-client privilege are as applicable to an entity before it files for bankruptcy as to any other entity. Absent express language in the Bankruptcy Code, the privilege should not be abrogated in the situation where its protections may be needed most. The Court in *Weintraub* observed that:

> While the trustee's interest in investigating the affairs of the corporate debtor on behalf of the creditors is certainly legitimate, it does not justify erosion of the corporations attorney-client privilege

---

5. The *Weintraub* Court stated that the plaintiff had "failed to demonstrate the 'nonexistence of any entity authorized to waive' [the debtor's] attorney-client privilege," thus implying that the burden of proving that no directors or officers currently existed should rest upon the Trustee. *See id.* at 341. This Court believes that the burden should fall upon those asserting the

privilege. Just as it would be absurd to require the Trustee to prove that the privilege did not apply to documents that the Trustee had never seen, it would be absurd to require him to prove the nonexistence of officers and directors. Access to this proof would more likely rest with the various attorneys for the corporate debtors.

simply on the basis of a change in economic circumstances.

722 F.2d at 343.

The Court need not decide the final issue of whether the Iorizzos' personal communications in the possession of Van Nostrand & Martin are shielded from disclosure. Mr. Sorkin, one of the attorneys for the Trustees, withdrew the Trustees' request for the personal records of the Iorizzos. Mr. Sorkin emphasized that the Trustees were seeking corporate correspondence, books, and records. Therefore, Van Nostrand & Martin are under no obligation to turn over purely personal records or correspondence belonging to the Iorizzos.

## Conclusion

A hearing is hereby scheduled for May 17, 1984, at which time interested parties will be given the opportunity to present evidence as to the existence of officers and directors of the corporate debtors. Absent demonstration of their existence, all of the materials held by Van Nostrand & Martin in behalf of Vantage and the five debtor corporations will be turned over to the Trustees. With respect to the entities other than Vantage and the five debtor corporations, and as to Vantage and the five debtor corporations in the event officers and directors are shown to exist, those asserting the privilege will be given the opportunity to demonstrate the applicability of the privilege to each particular document.

Van Nostrand & Martin is hereby directed to deliver to the Court all of the requested records. Those materials to which the privilege does not arguably apply must be immediately turned over to the Trustees. Pending the hearings to determine the applicability of the privilege to the remainder of the materials, the records will be placed in the Court under the same conditions as set forth in the Court's Order of October 28, 1983, a copy of which is appended hereto and made a part hereof.

SO ORDERED.

## APPENDIX

In re LAWRENCE S. and CHERYL IORIZZO.

Case No. 883–31066–20

In re BAY ISLE OIL CO., INC., et al.,

Case Nos. 883–31293–20 through 883–31297–20

In re VANTAGE PETROLEUM CORP., Debtors.

Case No. 883–81962–20

ORDER

Upon the application of Lawrence and Cheryl Iorizzo ("the Iorizzos"), William Morrell ("Morrell") and Van Nostrand & Martin ("VNM") seeking a stay of enforcement of orders of this court ("the Orders") directing Morrell and VNM to turnover documents, upon the affidavit of Abraham Backenroth, Esq., in opposition, and a hearing having been held before the Honorable Robert John Hall, Bankruptcy Judge, on October 27, 1983, and the Iorizzos, Morrell and VNM having appeared by their attorneys Polstein, Ferrara & Campriello, Esqs., Anthony Ferrara, Esq., of counsel, and the Chapter 11 Trustees herein having appeared by their attorneys Harvis & Zeichner, Esqs., Abraham Backenroth, Esq., of counsel, and the parties having agreed to a stay of enforcement of the Orders, pending determination on appeal, provided that the documents are forthwith turned over to the Clerk of the Court in accordance with the provisions hereinafter stated, and sufficient cause appearing therefor, it is

ORDERED, that Morrell and VNM are hereby directed to turnover all documents and correspondence relating to each of the above referenced debtors ("the Documents") to the Clerk of the Court at or before 4:00 P.M. October 28, 1983; and it is further

ORDERED, that said Documents are to be placed by the Clerk of the Court in locked filing cabinets, which filing cabinets are to be kept in a locked room ("the Room") at the United States Bankruptcy Courthouse in Westbury; and it is further

ORDERED, that keys to the filing cabinets shall be retained only by the firm of Polstein, Ferrara & Campriello ("the Firm") and that keys to the Room shall be retained only by the Clerk of the Court; and it is further

ORDERED, that access to the Room and to the Documents contained therein shall be provided to members of the Firm during normal business hours of the Bankruptcy Court; and it is further

ORDERED, that, except as hereinafter provided, the Documents may not be removed from the Room and may be viewed only in the Room and in the presence of an employee of the Clerk's Office by members of the Firm and by Irving Spiro, provided that Spiro is accompanied by a member of the Firm; and it is further

ORDERED, that, for the purposes of private consultation, members of the Firm may remove Documents from the Room after giving the Clerk's Office a signed receipt identifying the Documents being taken, which receipt shall be returned to the Firm only after the documents identified therein have been returned to the Room, but under no circumstances are any of the Documents to be removed from the Courthouse.

Dated:  Westbury, New York
      October 28, 1983
        /s/   Robert John Hall
        Bankruptcy Judge