## Kodak v. Mardis

*W. Scott Henning,* for plaintiff.
*J. Jay Cooper,* for defendants.

BAYLEY, *J.,* April 22, 1985—Defendant has taken numerous exceptions to this court's decree nisi of February 4, 1985, directing defendant James T. Mardis, Sr., to pay to the trustee in bankruptcy of Penn State Aluminum Company, Inc. all sums previously received by him, with interest, and all sums to be received by him under agreement of sale dated October 29, 1979, between Penn State Aluminum Company, Inc. and Pennex Aluminum Corporation. The chancellor held that the transfer under the aforesaid agreement of sale, although for valid consideration, violated § 357 of the Uniform Fraudulent Conveyances Act and § 1408 of the Pennsylvania Business Corporation Law.[*]

Prior to the trial, upon the waiver by the trustee in bankruptcy, and over the objection of defendant Mardis, the court entered an order requiring the former law firm of the bankrupt corporation to disclose to the trustee in bankruptcy information and documents otherwise subject to an attorney-client privilege. Defendant reasserted a claim of privilege at trial. He now claims that the court's ruling constituted error requiring a new trial.

We would note initially that the evidence presented at trial by the corporation's former attorney, supported by documents in his file, was very favorable to defendant Mardis. It was on the basis of this testimony that we found as a fact that there was fair consideration given by Pennex Aluminum Corporation to Penn State Aluminum Corporation pursuant to their agreement of sale dated October 29, 1979.

---

[*]Act of May 21, 1921, P.L. 1095, §7, 39 P.S. §357; An Act amended July 20, 1968, P.L. 459, §24, 15 P.S. §1408.

Accordingly, even if there was error in the court's allowing the trustee in bankruptcy to waive the attorney-client privilege, the error was harmless and does not necessitate the award of a new trial.

The issue of whether a trustee in bankruptcy for a corporation may waive the attorney-client privilege on behalf of the corporation is one of first impression in Pennsylvania. In this case defendant was president and sole shareholder of the bankrupt corporation. When the trustee brought this suit to recover funds which he claimed defendant had wrongfully deprived the corporation of as a result of the sale to Pennex Aluminum, defendant sought to forestall any inquiry by the trustee of the former attorney for the corporation or the production of any documents in the attorney's possession with respect to that transaction.

The United States Court of Appeals for the Eighth Circuit held in Citibank, N.A. v. Andros, 666 F.2d 1192 (1981):

"Because the right to decide whether to waive a corporation's attorney-client privilege belongs to management, the right to assert or waive that privilege passes with the property of the corporate debtor to the trustee." See In re: Continental Mortgage Investors, no. 79-593-S, slip op. at 2 (D. Mass., July 31, 1979).

The court recognized that corporations, like individuals, enjoy the protections of the attorney-client privilege. Diversified Industries, Inc. v. Meredith, 572 F.2d 576 (Eighth Cir. 1978). The privilege, however, belongs to the corporation, therefore, the power to assert or waive the privilege belongs to management, not the individual officers of the corporation. The court did not intimate that the trustee's waiver of the privilege should bar the officers

from asserting in other proceedings their own individual attorney-client privilege.

Other courts have held that the power to assert or waive the attorney-client privilege rests with a trustee in bankruptcy. See In re: National Trade Corp., 28 D.R. 872 (N.D. Ill. E.D., 1983); In re: O.P.M. Leasing Services, Inc., 13 D.R. 64 (D.C.S.D.N.Y. 1981). The United States Court of Appeals for the Second Circuit in In re: O.P.M. Leasing Services, Inc., 670 F.2d 383 (1982), upheld an order by a bankruptcy judge, affirmed by the United States District Court, authorizing the former law firm of a bankrupt corporation to disclose to the trustee in bankruptcy information and documents otherwise in the attorney-client privilege pursuant to waiver of that privilege by the trustee on behalf of the corporation. The facts of this case are similar to the present case since it involved a corporation in which one person had sole voting control. The court of appeals found it unnecessary to decide the issue based on property rights as per the Eighth Circuit's decision in Citibank, N.A. v. Andros, supra. The court held that it was satisfied that the district court was correct in concluding that "the balancing of competing interests evaluated by the Bankruptcy Judge . . . fully justifies a finding that the trustee is entitled to exercise the debtor's attorney-client privilege in this particular case."

There are courts that have held that the privilege is not waivable by the trustee in bankruptcy. See Commodity Futures Trading Commission v. Weintraub, 772 F.2d 338 (Seventh Cir. 1984); In re: Vantage Petroleum Corp., 40 B.R. 34 (D.C.E.D., N.Y. 1984); In the Matter of Hy-Gain Electronics Corp., 11 B.R. 119 (D. Neb. 1978); and Ross v. Popper, 9 B.R. 485 (S.D.N.Y. 1980).

In Commodity Futures Trading Commission v. Weintraub, supra, the court noted:

"The purpose of the attorney-client privilege is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interest in the observance of law and administration of justice. See Upjohn Co. v. United States, 449 U.S. at 389, 101 S.Ct. at 682. The privilege 'rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out.' See Trammel v. United States, 445 U.S. at 51, 100 S.Ct. at 912. The privilege thus exists to promote full disclosure by the client, and to foster a relationship of trust between attorney and client."

The Seventh Circuit Court of Appeals concluded that corporate clients will be wary of communicating fully with their attorneys for fear that sensitive information could subsequently be disclosed due to bankruptcy. Accordingly, the court was unwilling to "erode" the privilege merely because the corporation entered bankruptcy.

We conclude that the Eighth and Second Circuit are the better reasoned opinions. When Mardis communicated with the corporation's attorney, he was acting in a fiduciary relationship with the corporation, not on his own behalf. Hechelman v. Geyer, 248 Pa. 430 (1915). When acting in that corporate capacity he subjected himself to the divulging of those communications with corporate counsel if the assets of the corporation transferred to a trustee in bankruptcy. If he had wished to forever have his communications remain confidential he could have obtained advice from a personal attorney before entering into the sale to Pennex Aluminum. Furthermore, any balancing of the interests in

this case weighs heavily in favor of the corporate trustee's position, since he claimed that Mardis breached his duties under the Uniform Fraudulent Conveyances Act, and §1408 of the Business Corporation Law, while acting in his capacity as president and sole owner of the corporation. The bankrupt corporation should not be hampered in its efforts to recover funds lawfully due to it by a claim from the sole owner of the corporation, who is charged with wrongful conduct, that information in the possession of the corporation's attorney should not be utilized to seek the truth. This is especially true in this case where the subject transfer took place when Penn State Aluminum was insolvent. Accordingly, the court did not err in allowing the trustee to waive the claim of attorney-client privilege.

We have examined all other reasons asserted by defendant in his exceptions to the chancellor's decree. We conclude that all of those issues have been adequately addressed in the chancellor's opinion of February 4, 1985, in support of the decree nisi. Accordingly, the following is entered.

## ORDER OF COURT

And now, this April 22, 1985:

1. Defendant's exceptions to the decree nisi dated February 4, 1985, are dismissed.

2. James T. Mardis, Sr., shall pay to the trustee in bankruptcy of Penn State Aluminum Company, Inc., the sum of $52,462.82, with legal interest, representing moneys received by him through February 1, 1985 pursuant to the agreement of sale dated October 29, 1979 between Penn State Aluminum Company, Inc. and Pennex Aluminum Corporation.

3. James T. Mardis, Sr., or his successor or assigns, shall from this date forward, assign as of the

date received, to the trustee in bankruptcy for Penn State Aluminum Company, Inc., all future moneys received pursuant to the agreement of sale dated October 29, 1979, between Penn State Aluminum Company, Inc. and Pennex Aluminum Corporation.

4. Each party shall pay its own costs of these proceedings and its own counsel fees.